[No. B133043. Second Dist., Div. Seven. May 16, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
ALFRED FRAZIER, Defendant and Appellant.

[No. B142037. Second Dist., Div. Seven. May 16, 2001.]

In re ALFRED FRAZIER on Habeas Corpus.

**COUNSEL**

Linda Starr, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Jaime L. Fuster and William H. Davis, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**JOHNSON, J.**—Alfred Frazier appeals from the judgment following his conviction on one count of committing a lewd act with a child under age 14 and one count of annoying or molesting a child under 18. We hold the jury was improperly instructed under former CALJIC No. 2.50.01 and this error prejudiced defendant. Therefore, we reverse.

## FACTS AND PROCEEDINGS BELOW

Defendant's convictions followed his third trial for the same incident with the same child, nine-year-old Caryn P. The evidence, viewed in the light most favorable to the judgment, showed the following.

Caryn P. spent the night at the house of her uncle, Thomas F. She went to sleep in the top bunk of a bunk bed in her cousin Christian's room. Sometime during the night Caryn awoke because she felt a finger touching her, moving slowly and gently in a circular motion over her bare buttocks. Her underpants were pulled down. When she rolled over she saw defendant, who is also one of her uncles, drop to the floor from the stool on which he had been standing and then crawl out of the room. Christian, who had been sleeping in the lower bunk, woke up when he felt something shaking the bed. He saw defendant standing on a stool next to the bed. Defendant got off the stool and as he did so he dropped his hat. Defendant bent over and picked up his hat then left the room.

The next morning, Caryn told her uncle Thomas and her mother what had happened. Her mother called the police.

At trial, over defendant's objection, the prosecution presented evidence of three previous uncharged incidents involving defendant and young female relatives.

Trina L., defendant's cousin, testified that when she was 15 or 16 years old and defendant was 13 or 14, defendant slept at her house one night. She was asleep on the top bunk of a bunk bed when she felt someone touching her vagina over her underpants, slowly moving a finger in a circular motion. When she looked she saw defendant standing next to the bed. He dropped to the floor and pretended to be sleeping.

Defendant's niece, Chavon F., testified to a similar incident. One night as she lay in bed defendant came into her bedroom and touched her with a gentle up-and-down movement on the back of her thigh, which was covered by a blanket.

Tasheka D., defendant's cousin, testified that when she was six or seven years old she lived for a time with defendant and his mother. Defendant sodomized her several times and once forced her to orally copulate him.

Defendant took the stand and denied committing the present offense and the other uncharged offenses. As to the present offense, he admitted coming

into Caryn's room looking for a blanket. Not finding one, he left. He denied fondling Chavon. He explained he was sent into her room to make sure she was there sleeping and had not stuffed pillows under the blanket and sneaked out. He flatly denied sodomizing Tasheka or forcing her to orally copulate him.

As noted, the jury convicted defendant of committing a lewd act with Caryn, a felony, and of molesting her, a misdemeanor. The trial court sentenced defendant to an eight-year term in prison for the felony and a concurrent one-year term, stayed, for the misdemeanor. Defendant filed a timely appeal.[1]

## DISCUSSION

I. *The Version of CALJIC No. 2.50.01 Given at Defendant's Trial Impermissibly Allowed the Jury to Convict Defendant Without Proof Beyond a Reasonable Doubt of Every Fact Necessary to Constitute the Charged Crimes.*

The trial court instructed the jury on the use it could make of evidence of uncharged sex crimes. With minor modifications, the court quoted the language of CALJIC No. 2.50.01 prior to its 1999 revision: "Evidence has been introduced for the purpose of showing that defendant engaged in a sexual offense on one or more occasions other than that charged in this case. . . . If you find the defendant committed a prior sexual offense, you may but are not required to infer that the defendant had a disposition to commit sexual offenses. If you find the defendant had this disposition, you may, but are not required to infer that he was likely to *and did commit* the crimes of which he is accused."

The jury was further instructed it could find defendant committed the prior sex offenses based on a preponderance of the evidence and provided a definition of the term "preponderance of the evidence."

The jury did not receive the cautionary instruction added to the end of CALJIC No. 2.50.01 in 1999, which states: "However, if you find by a preponderance of the evidence that the defendant committed prior sexual

---

[1]Defendant also filed a petition for writ of habeas corpus in order to bring before us additional evidence in support of his claim the trial court erred in denying him a continuance to obtain information about Tasheka, which would aid in impeaching her testimony. We ordered the petition considered along with the appeal. Because we reverse the judgment for instructional error, the writ petition is moot.

offenses, *that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crimes.*" (Italics added.)[2]

■■■■■ Defendant argues the version of CALJIC No. 2.50.01 read to the jury permitted the jury to find him guilty of the present offense based on a preponderance of the evidence in violation of his due process right to require proof beyond a reasonable doubt of every element of the offense.[3] He reasons the jury could find by a preponderance of the evidence he committed the uncharged sex offenses against Trina, Chavon and Tasheka and from there infer he "did commit" the charged crime against Caryn P.[4]

The People disagree with defendant's reasoning because it fails to take into account other instructions the jury received. When the challenged instruction is taken together with the instructions on reasonable doubt, elements of the charged offenses and the duty to "consider the instructions as a whole" there was no reasonable likelihood the jury would return a verdict of guilty based on evidence of uncharged offenses alone.[5]

■ We find the version of CALJIC No. 2.50.01 given here constitutionally infirm because it instructed the jurors they could convict defendant of the current charges based solely on their determination he had committed prior sexual offenses. No other instruction effectively countered this misstatement of law.

We begin our analysis by noting former CALJIC No. 2.50.01 was unambiguous in its language. It told the jury if it determined the defendant

---

[2]In *People v. Falsetta* (1999) 21 Cal.4th 903, 923-924 [89 Cal.Rptr.2d 847, 986 P.2d 182], our Supreme Court specifically found the 1999 revision of CALJIC No. 2.50.01 "adequately sets forth the controlling principles under [Evidence Code] section 1108." The court did not address the pre-1999 version of the instruction given in the case before us. That issue is presently before the court in *People v. Wutzke* (2000) 83 Cal.App.4th 622 [99 Cal.Rptr.2d 875], review granted December 20, 2000, S092179.

[3]The People argue defendant waived his challenge to the instruction because he not only failed to object in the trial court, he expressly agreed the instruction could be given. We reject the People's argument. A defendant is not required to object to a legally erroneous instruction in order to preserve the issue for appeal. (Code Civ. Proc., § 647.) Furthermore, there is an indication the defendant did object to the instruction in unreported proceedings because the trial court stated on the record: "Your objection to . . . 2.50.01 is overruled." Finally, the record does not show defendant agreed to the instruction but agreed to the modification of certain language not pertinent to the issue here.

[4]Several opinions from our district and others have disapproved former CALJIC No. 2.50.01 and the parallel language in former CALJIC No. 2.50.02 (applicable to uncharged crimes of domestic violence) on the ground asserted by defendant. (See *People v. Younger* (2000) 84 Cal.App.4th 1360, 1381-1382 [101 Cal.Rptr.2d 624]; *People v. Orellano* (2000) 79 Cal.App.4th 179, 184-186 [93 Cal.Rptr.2d 866]; *People v. Vichroy* (1999) 76 Cal.App.4th 92, 98-101 [90 Cal.Rptr.2d 105].)

[5]A number of appellate court opinions have adopted the People's view. (See *People v. Jeffries* (2000) 83 Cal.App.4th 15, 23-24 [98 Cal.Rptr.2d 903] and cases cited therein.)

committed other sexual offenses it could "infer that he was likely to commit *and did commit* the crime of which he is accused." We see no merit in the People's attempt to draw a distinction between "inferring" the defendant did it and "finding" the defendant did it.[6] A reasonable juror would take the instruction to mean exactly what it says: proof of prior sexual offenses is enough to prove guilt of the current offenses.[7]

We acknowledge the People's contention a defect in an instruction can be viewed as harmless when it is cured by other instructions. This is not the case here, however.

No instruction made up for the essential element missing from former CALJIC No. 2.50.01: an explanation to the jury it could not consider evidence of prior sexual offenses sufficient for a finding of guilt on the charged offenses. As our Supreme Court explained in *People v. Falsetta*, "[t]his admonition helps to assure that the defendant will be tried and convicted for his present, not his past, offenses."[8] This missing element is not found in the instructions, relied on by the People, which tell the jury to consider all the evidence and instructions, set out the standard of proof beyond a reasonable doubt and define the elements of the crimes.[9]

Furthermore, taking the instructions "as a whole" in this case results in confusion, not clarity. This is because, considering the instructions as a whole, the jury could believe the prior offense evidence was sufficient to support an inference the elements of the charged offense have been established beyond a reasonable doubt. Because the jury would not expect the trial court to permit an unwarranted or irrational inference, former CALJIC No. 2.50.01 "poses a significant danger that the jury will decide it would be irrational to find a defendant who committed prior offenses not guilty, regardless of the weakness of the direct evidence or of the other circumstantial evidence presented by the prosecution."[10] Alternatively, the jurors might understand they were to go to the instructions on reasonable doubt and elements of the crimes only if they did *not* find by a preponderance of the evidence that the defendant had committed the prior sex offenses.

Adding to the jury's confusion is the inconsistency in the standards of proof described by the instructions. CALJIC No. 2.50.01, permitting the jury to infer defendant's guilt from his prior sex offenses, was immediately followed by CALJIC No. 2.50.1 which told the jury to apply the preponderance of the evidence standard to determine whether defendant had committed the prior offenses. CALJIC No. 2.01, on the other hand, told the jury

---

[6]See *People v. Jeffries, supra*, 83 Cal.App.4th at page 23.
[7]*People v. Younger, supra*, 84 Cal.App.4th at pages 1381-1382.
[8]*People v. Falsetta, supra*, 21 Cal.4th at page 923.
[9]*People v. Younger, supra*, 84 Cal.App.4th at page 1382.
[10]*People v. Younger, supra*, 84 Cal.App.4th at page 1382.

each fact supporting an inference essential to establish guilt must be proven beyond a reasonable doubt. If the jury believed the propensity evidence was essential to establish defendant's guilt, then CALJIC No. 2.01 was in direct conflict with CALJIC No. 2.50.1.[11]

Given the confusion which results from attempting to apply the court's instructions "as a whole," it would be very tempting for a jury to take the path of least resistance which leads directly from evidence of the defendant's disposition to a guilty verdict and thereby avoids the troubling waters represented by the remainder of the evidence and instructions. Such a deliberative process is reasonably likely given the strong appeal of propensity evidence, particularly where the other evidence is closely balanced or there is disagreement among the jurors over the strength of the other evidence.[12] As observed in *People v. James*, "If the court seems to approve a faster and shorter path to conviction, which coincides with the natural inclination to assume guilt from propensity, it is unrealistic to believe the jury will correct the wrong turns in that path by reasoning from other, more general instructions."[13]

The record in this case suggests the jury in the third trial did indeed follow the path of least resistance. In the first trial the jury deliberated for two days, reheard the testimony of Christian F., and declared it was "hopelessly deadlocked." In the second trial, the jury deliberated three days, reheard the testimony of Caryn P. and the defendant, and declared it was unable to reach a verdict. In the third trial, the jury deliberated for just 80 minutes, reheard no testimony, and found defendant guilty on both counts. The key witnesses were the same in the second and third trials and their testimony was essentially the same. This suggests the difference in outcomes was not the result of how the cases were presented, but how the jurors viewed their instructions.

For the reasons given above, we conclude former CALJIC No. 2.50.01 denied defendant due process because it allowed the jury to convict him without proof beyond a reasonable doubt of every element of the charged offenses.

Just as a split of authority exists as to the constitutionality of former CALJIC No. 2.50.01, a split of authority exists over the standard of

---

[11]Compare with *People v. James* (2000) 81 Cal.App.4th 1343, 1358 [96 Cal.Rptr.2d 823] (disapproving former CALJIC No. 2.50.02).

[12]*People v. Orellano, supra*, 79 Cal.App.4th 179, 185. As the Supreme Court pointed out in *People v. Falsetta*, propensity evidence generally has been excluded " ' "not because it has no appreciable probative value, *but because it has too much.*" . . .' " (*People v. Falsetta, supra*, 21 Cal.4th at p. 915, citation omitted.)

[13]*People v. James, supra*, 81 Cal.App.4th at page 1354.

prejudice to be applied where the instruction is given. Some courts have held the error is reversible per se,[14] others have held the error is subject to the *Chapman* standard,[15] and one court, in dictum, has suggested application of the traditional approach under *Watson*.[16] The People contend if giving the instruction was error, that error should be evaluated under *Chapman*. Although it is a close call between error per se and the *Chapman* standard, we will apply the *Chapman* standard for the reasons explained in *People v. James*.[17]

In the present case, we cannot say beyond a reasonable doubt the erroneous instruction did not contribute to the verdict because to make such a finding we must find the error was unimportant in relation to everything else the jury considered on the issue of guilt.[18]

We recognize, of course, the People presented evidence of defendant's guilt outside the presumption permitted by CALJIC No. 2.50.01. Caryn P. testified she felt someone's finger moving around her bare buttocks and when she looked up defendant was standing on a stool next to her bed. Defendant admitted he came into her room that night and stood next to her bed. Other witnesses testified defendant had fondled them in a similar manner. Thus, the People presented direct and circumstantial evidence of identity, motive, opportunity, intent, and modus operandi.

Under *Chapman*'s reasonable doubt standard, however, it is not enough to show the jury considered evidence from which it *could have* come to its verdict without reliance on the presumption that because the defendant did it in the past he did it this time.[19] Rather, the issue under *Chapman* is whether the jury *actually* rested its verdict on evidence establishing beyond a reasonable doubt the presumed fact (defendant did it) independently of the presumption (defendant did it in the past therefore he did it this time).[20] We approach this inquiry by asking whether the force of the evidence considered by the jury in accordance with its instructions "is so overwhelming as to

---

[14]*People v. Orellano, supra*, 79 Cal.App.4th at page 186; *People v. Vichroy, supra*, 76 Cal.App.4th at page 101.

[15]*Chapman v. California* (1967) 386 U.S. 18 [87 S.Ct. 824, 17 L.Ed.2d 705]; see *People v. Younger, supra*, 84 Cal.App.4th at pages 1383-1384; and *People v. James, supra*, 81 Cal.App.4th at pages 1360.

[16]*People v. Watson* (1956) 46 Cal.2d 818 [299 P.2d 243]; see *People v. Regalado* (2000) 78 Cal.App.4th 1056, 1063, footnote 5 [93 Cal.Rptr.2d 83].

[17]*People v. James, supra*, 81 Cal.App.4th at pages 1360-1362.

[18]*Yates v. Evatt* (1991) 500 U.S. 391, 403 [111 S.Ct. 1884, 1892-1893, 114 L.Ed.2d 432].

[19]*Yates v. Evatt, supra*, 500 U.S. at page 404 [111 S.Ct. at page 1893].

[20]*Yates v. Evatt, supra*, 500 U.S. at page 404 [111 S.Ct. at page 1893].

leave it beyond a reasonable doubt that the verdict resting on that evidence would have been the same in the absence of the presumption."[21]

That test is not met here. The fact defendant was tried twice before on nearly identical evidence is itself a strong indication the People's evidence was not "overwhelming." Although Caryn, Trina and Chavon testified defendant molested them in a similar fashion under similar circumstances defendant denied these accusations and presented plausible explanations for why he was in their rooms when they were sleeping. Tasheka's testimony was impeached by her mother who testified Tasheka told her she lied about the sodomy and forcible oral copulation "to get [defendant] in trouble."

As in *People v. Younger*,[22] reasonable doubt is reinforced here by the prosecutor's use of the propensity instruction in closing argument. In the second trial the prosecution introduced virtually the same evidence of defendant's prior sexual offenses as in the third trial. The difference was that in the second trial the prosecution made no reference to the propensity instruction whereas in the third trial the prosecution relied heavily on that instruction. For example, the prosecutor told the jury: "And then, for the disposition to commit sex acts, that's another thing that you're going to be instructed on. . . . What that's referring to is basically he's done this before, he had touched somebody or molested somebody or violated somebody in a sexual way before, *so he did it this time*. And the law says that's something that you can look at and you can use it for that direct purpose. For that direct purpose to say *because he's done it before, he did it this time*. [¶] . . . [¶] And, ladies and gentlemen, where there's smoke there's fire. It's true. It's happened over and over again because the defendant is the type of person that doesn't draw that line. . . . He crosses that line. And it's time for it to stop. It's time for it to stop." (Italics added.)

We do not fault the prosecutor for taking advantage of the instruction, but the difference in result between the second and third trials shows her arguments may have encouraged the jury to substitute proof of prior offenses by a preponderance of the evidence for the more difficult proof of the current offenses beyond a reasonable doubt.[23]

Finally, although the prior crimes evidence was properly admitted under Evidence Code section 1108,[24] "the tendency of propensity evidence to have

---

[21]*Yates v. Evatt, supra*, 500 U.S. at page 405 [111 S.Ct. at page 1893].
[22]*People v. Younger, supra*, 84 Cal.App.4th at pages 1384-1385.
[23]Compare with *People v. Younger, supra*, 84 Cal.App.4th at page 1385.
[24]See discussion in part II, *post*.

a disproportionate impact on the jury" is relevant to the question whether the erroneous instruction failed, beyond a reasonable doubt, to contribute to the verdict.[25]

For the reasons given above, we are not satisfied beyond a reasonable doubt the jury did not infer defendant's guilt of the current offenses simply from his past offenses, as permitted by the former version of CALJIC No. 2.50.01.

II. *The Trial Court Did Not Abuse Its Discretion in Admitting Evidence of Defendant's Uncharged Sexual Misconduct.*

Should this case be tried yet a fourth time, we address the issue of admissibility of evidence defendant committed past sexual offenses.

Propensity evidence is made admissible in sex offense cases by Evidence Code section 1108, which provides in relevant part: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by [Evidence Code] section 1101, if the evidence is not inadmissible pursuant to [Evidence Code] section 352." In *People v. Falsetta* our Supreme Court upheld the constitutionality of section 1108 because, among other reasons, the trial court could exclude the evidence if the court believed its prejudicial nature outweighed its probative value, its production would consume an undue amount of time, or it would confuse the issues or mislead the jury.[26]

Defendant contends the trial court erred in admitting evidence of his uncharged sex offenses against Trina, Chavon, and Tasheka because the evidence was highly prejudicial, tended to confuse the issues, and consumed an undue amount of time. We disagree.

A. *The Evidence of Uncharged Crimes Was Not Unduly Prejudicial.*

Tasheka's testimony defendant sodomized her and forced her to orally copulate him was unduly prejudicial, defendant claims, because the alleged crimes were far more serious than the crimes for which he was presently charged, they occurred 15 or 16 years earlier, and evidence, which could have impeached Tasheka, was no longer available.

The charged and uncharged crimes need not be sufficiently similar that evidence of the latter would be admissible under Evidence Code section

---

[25]*People v. James, supra*, 81 Cal.App.4th at page 1363.
[26]*People v. Falsetta, supra*, 21 Cal.4th at page 916; Evidence Code section 352.

1101, otherwise Evidence Code section 1108 would serve no purpose. It is enough the charged and uncharged offenses are sex offenses as defined in section 1108.[27]

The fact the offenses against Tasheka occurred 15 or 16 years earlier does not make evidence of those offenses irrelevant. Rather, the evidence shows defendant has a pattern of molesting his young female relatives going back 20 years to the fondling of Tina's vagina and including the rubbing of Chavon's thigh two or three years before the charged incident with Caryn.[28]

Defendant claims evidence which would have impeached Tasheka's testimony about being sodomized and forced into oral copulation has been lost in the 15-to-16-year interval. This lost evidence consisted of a defense investigator's report in connection with a previous sex offense charge against defendant, for which he was acquitted. According to the report, Tasheka's mother told the investigator Tasheka had told her she lied about defendant molesting her. Inability to introduce the investigator's report did not prejudice defendant, however, because Tasheka's mother testified her daughter told her "she had lied. She just wanted to get [defendant] in trouble."

Finally, defendant contends the passage of time prevented him from gathering physical evidence which might have contradicted Tasheka's allegations. The problem with this argument is that Tasheka did not tell anyone in the household about the sodomy and oral copulation when it occurred. It was not until some unspecified time later, after she returned from California to New York, that she told her grandmother about it. There is nothing to suggest the passage of time after the alleged sexual offenses against Tasheka caused the defense to lose physical evidence which would otherwise have been available.

B. *The Uncharged Crimes Evidence Did Not Confuse the Jury About the Issues.*

Defendant next contends evidence he committed three uncharged sexual offenses confused the jurors as to the issues by creating in them a desire to punish defendant for the uncharged crimes and making it difficult for them to separate the fondling of Caryn from the sexual offenses against the other girls. The record does not support defendant's contention.

---

[27]*People v. Falsetta, supra,* 21 Cal.4th at page 916.

[28]Compare with *People v. Ewoldt* (1994) 7 Cal.4th 380, 405 [27 Cal.Rptr.2d 646, 867 P.2d 757].

A risk does exist a jury might punish the defendant for his uncharged crimes regardless of whether it considered him guilty of the charged offense especially where, as here, the uncharged offenses against Tasheka were much more serious than the charged offense against Caryn. This risk, however, is counterbalanced by instructions on reasonable doubt, the necessity of proof as to each of the elements of a lewd act with a minor, and specifically that the jury "must not convict the defendant of any crime with which he is not charged."

C. *Defendant Was Not Prejudiced by the Amount of Time It Took to Present the Evidence of Uncharged Crimes.*

Defendant argues the prosecution and defense evidence related to the alleged offenses against Tina, Chavon and Tasheka consumed 182 pages of reporter's transcript, or 27 percent of the total trial transcript, and this was an undue consumption of time. Accepting the accuracy of defendant's figures, we cannot say the trial court abused its discretion in admitting this evidence.

Conceivably a case could arise in which the time consumed trying the uncharged offenses so dwarfed the trial on the current charge as to unfairly prejudice the defendant. Defendant has not cited such a case nor has he explained why he believes the time spent on the uncharged offenses in this case was prejudicial. As we have explained above, the evidence of uncharged offenses was otherwise properly admitted and we cannot say spending less than a third of the total trial time on these issues was prejudicial as a matter of law.

D. *Conclusion*

The trial court enjoys broad discretion under Evidence Code section 352 in determining whether the probative value of particular evidence is outweighed by concerns of undue prejudice, confusion or consumption of time and this discretion is built into Evidence Code section 1108, subdivision (a). ■ The exercise of this statutory discretion will not be disturbed on appeal " 'except on a showing that the trial court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.' . . ."[29] Defendant made no such showing here.

---

[29]*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124 [36 Cal.Rptr.2d 235, 885 P.2d 1], italics and citation omitted.

## DISPOSITION

The judgment is reversed. The petition for writ of habeas corpus is denied as moot.

Lillie, P. J., and Woods, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 15, 2001. George, C. J., and Werdegar, J., did not participate therein.