[No. C060342. Third Dist. Mar. 30, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
RALPH ESCUDERO, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION***]**

---

*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part II.

**COUNSEL**

Patricia L. Brisbois, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Tennant-Nieto and Christina Hitomi, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SCOTLAND, P. J.**—A jury found defendant Ralph Escudero guilty of committing a lewd and lascivious act on a child under the age of 14 (Pen. Code, § 288, subd. (a)), and he was sentenced to a term of eight years in state prison and ordered to pay victim restitution. He appeals.

In the published part of this opinion, we reject defendant's claim that the trial court erred in allowing the introduction of evidence of defendant's uncharged acts of sexual assault against two adult women. In his view, those crimes against adult women did not have any tendency in reason to prove he had a propensity to commit lewd and lascivious acts with a girl when she was seven years old. As we will explain, the trial court did not abuse its discretion in concluding that the other crimes had substantial probative value despite the differences in ages of the victims.

Consistent with common experience, the Legislature has found that persons who commit sex offenses often have a propensity to commit sex crimes

against more than one victim. For this reason, the Legislature enacted Evidence Code section 1108, subdivision (a), which provides that, in a criminal action in which the defendant is accused of a sex crime, evidence of the defendant's commission of other sex crimes is admissible unless the trial court exercises its discretion to exclude the other crimes evidence pursuant to Evidence Code section 352. Thus, such evidence is presumed to be admissible to assist the trier of fact "in evaluating the victim's and the defendant's credibility." (*People v. Falsetta* (1999) 21 Cal.4th 903, 911 [89 Cal.Rptr.2d 847, 986 P.2d 182].)

■ Here, the evidence demonstrated that defendant took advantage of vulnerable females regardless of their ages, sexually assaulting them when it was particularly risky to do so. Accused of molesting a girl when she was seven years old, defendant was shown to have also sexually assaulted teenage girls and two adult women. This other sex crimes evidence was highly probative of his intent to touch the young girl for sexual gratification, thus dispelling any notion that the touching was the result of accident or mistake. Defendant is simply wrong in claiming that, "[o]ther than sheer speculation, the record is devoid of evidence showing that a man who allegedly forcibly and sexually assaults adult women also would be inclined to sexually molest a young child." As illustrated by this case, persons with deviant sexual urges do not always limit their sex crimes to victims of the same age group. Thus, evidence of a defendant's sex offenses against adult women is probative to the question of the defendant's guilt of committing sex crimes against a young girl. We also conclude that testimony regarding his sexual molestation of teenage girls was properly allowed into evidence.

In the unpublished part of our opinion, we conclude the matter must be remanded for the trial court to hold a victim restitution hearing.

FACTS

When the victim was four years old, defendant moved into her mother's house, where the victim and her 15-year-old sister also lived. The mother knew that defendant had been charged with rape the year before. The sister moved out after she complained that defendant made sexual advances but her mother refused to believe that defendant did so.

Although the victim had her own room, her mother allowed the victim to sleep in the bed with her and defendant, despite the fact that defendant always slept naked.

On one occasion when the victim was seven years old and sleeping with her mother and defendant, she awoke to find her pajama bottoms and underwear had been taken off. Defendant grabbed her hand, put it on his penis, and touched her "private area," "just moving his hand around." When she tried to get up, he held her down and told her, "It is okay." He did the same thing on another occasion. The victim did not tell anyone when it happened because she was scared.

Later that year, the mother of the victim's best friend heard the girls whispering and her daughter tell the victim, "It's okay, talk to my mom." When asked if she needed to talk about something, the victim said that defendant had touched her inappropriately. The victim did not want the woman to report the misconduct because the victim was afraid. The woman urged the victim to tell her mother and grandparents.

Several months later, the victim told her maternal grandmother that defendant had molested her, but her grandmother did nothing about it. After learning of the molestation from the victim, her mother made defendant move out of the house but continued to see him socially and did not report the molestation.

Two years later, after defendant threatened to commit suicide because he was not living in the house, the mother allowed him to move back in with her and the victim, who was then 10 years old.

While visiting her father and watching television with him and his parents, the victim saw a news report about a girl her age who had been raped and killed. The victim began crying, asked to talk to her paternal grandmother in private, and then revealed that defendant had molested her. The grandmother told the victim's father, who filed a report with law enforcement.

*Accusations of Other Sexual Misconduct*

 A. *Testimony of the victim's sister and her teenage friends*

The victim's older sister recalled numerous instances when defendant acted inappropriately with her and her friends while they were 14 to 16 years old. He made sexually suggestive and rude comments, including telling them their bodies were developing well. He would look at their bodies and "his eyes were always wandering towards [their] chests." Defendant would grab the

sister's legs and try to rub her thighs. He would offer and give her back massages with lotion when her mother was at work or out of the room. On one occasion, when the sister was shopping for a homecoming dress, defendant told her the dress she tried on made her breasts look really good and she was "sexy." After telling her mother that she was uncomfortable with defendant's behavior, the sister moved out to live with her father because her mother would not believe her. She felt guilty leaving the victim behind, although she never saw defendant do anything inappropriate to the victim.

Often, defendant would hug the victim's sister and her friends. He would come up behind them and grab them around the waist under their bust lines. The friends testified that the hugs felt sexual, not friendly. Defendant would also grab and caress their upper thighs. He did so to one of the girls on 10 to 15 occasions; each time, she would push his hand off or step away. Another girl said that defendant put his hand on her thigh and occasionally rubbed or caressed it. She would try to cross her legs in a way to prevent him from doing this. She also testified that defendant would stare at the girls' chests and say they looked "sexy."

While the victim's sister lived in the home, defendant called her bedroom the "orgy room" and would come in when she and other girls were there. He provided them with alcohol on numerous occasions. Her mother knew that defendant was giving the girls alcohol; indeed, the mother also provided alcohol for the girls.

### B. *Testimony of C.S.*

The year before defendant initially moved in with the victim and her mother, he sexually assaulted C.S., who was in her 30's. She was dating one of defendant's friends and they socialized together. One evening, C.S. and her boyfriend went to defendant's house for a barbeque. Sick from drinking wine and tequila, she fell asleep. When she awoke, defendant knelt beside her and raised the blanket that was covering her. He placed his hand under her clothes and tried to put his fingers in her vagina. She told him to stop, but he continued and said, "You know you want it." Defendant unzipped his pants, grabbed her hand, and tried to force her hand inside his pants. C.S. continued to protest and, after trying once more, defendant gave up and went back into the house. Defendant was married at the time of the assault, and his wife was sleeping in her bedroom, about 10 feet away, with the window open.

## C. *Testimony of C.L.*

About a month after defendant molested C.S., he sexually assaulted C.L., who had met defendant through work. She had considered him a friend and had socialized with him and a group of friends a few times. One night, C.L. was at a bar with a female friend when she saw defendant. The three of them drank, danced, and talked. When it was time to leave, C.L. thought defendant had had too much alcohol to drive home safely, so she offered to allow him to stay at her house that night. After falling asleep in her bed, she awoke when her head slammed against the headboard. Her pants had been removed, and defendant had his hand inside her vagina. He was penetrating her vagina in a manner that caused her head to repeatedly slam against the head-board. C.L. kept saying "no," and defendant placed his hand over her mouth. He told her that she was "ready for him" because she was "wet." C.L. was scared. While he was penetrating her vagina with his hand or orally copulating her, she managed to reach the telephone, dial her friend, Victor, and indicate that she needed help. Victor arrived and made defendant leave. After Victor left the next morning, defendant twice returned to C.L.'s residence. Each time, she told defendant to leave, which he finally did. C.L. did not initially report the sexual assault because she lived in a small town and felt that it was humiliating. But she did tell a friend, who then notified the police. Defendant was charged with sexual assault. The trial resulted in a hung jury, and the charges were subsequently dismissed.

## DISCUSSION

### I

The trial court ruled that (1) defendant's prior acts against C.S. and C.L. were admissible pursuant to Evidence Code section 1108, and (2) his prior actions against the teenage girls were admissible pursuant to Evidence Code section 1101 as evidence of intent and absence of mistake.

Defendant contends the "extremely inflammatory nature of the prior sexual assaults [against C.S. and C.L.], coupled with [their] minimal relevance, required that the evidence be excluded." He also argues that evidence of his sexual conduct regarding the teenage girls "was more prejudicial than probative and should have been excluded as well." We are not persuaded.

### A

Evidence Code section 1101 generally prohibits the introduction of character evidence to prove a defendant's propensity to commit conduct on a specific occasion. (Evid. Code, § 1101.) An exception to this general rule is

Evidence Code section 1108, subdivision (a), which provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." (Evid. Code, § 1108, subd. (a).)

In enacting Evidence Code section 1108 to ensure "the trier of fact would be made aware of the defendant's other sex offenses in evaluating the victim's and the defendant's credibility" (*People v. Falsetta, supra*, 21 Cal.4th at p. 911), the Legislature found that "evidence of uncharged sexual offenses is so uniquely probative in sex crimes prosecutions it is presumed admissible without regard to the limitations of Evidence Code section 1101" (*People v. Yovanov* (1999) 69 Cal.App.4th 392, 405 [81 Cal.Rptr.2d 586]).

Thus, when a defendant is charged with a sex offense, evidence that he committed other, uncharged sex crimes is admissible unless the trial court excludes it pursuant to Evidence Code section 352, which states: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

"[E]vidence should be excluded [pursuant to Evidence Code section 352] as unduly prejudicial when it is of such nature as to inflame the emotions of the jury, motivating [jurors] to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction. In such a circumstance, the evidence is unduly prejudicial because of the substantial likelihood the jury will use it for an illegitimate purpose." (*Vorse v. Sarasy* (1997) 53 Cal.App.4th 998, 1009 [62 Cal.Rptr.2d 164].)

We will not disturb a trial court's exercise of discretion under Evidence Code section 352 unless the defendant affirmatively shows that the court exercised its discretion " 'in an arbitrary, capricious or patently absurd manner.' " (*People v. Sanders* (1995) 11 Cal.4th 475, 512 [46 Cal.Rptr.2d 751, 905 P.2d 420], quoting *People v. Jordon* (1986) 42 Cal.3d 308, 316 [228 Cal.Rptr. 197, 721 P.2d 79].)

B

Defendant does not dispute that evidence of a person's commission of other sexual offenses is ordinarily relevant in a prosecution against the person for another sex crime. (*People v. Fitch* (1997) 55 Cal.App.4th 172, 179 [63 Cal.Rptr.2d 753].)

Nevertheless, he argues, the testimony of C.S. and C.L. about defendant's sexual assaults against them when they were adult women did not have a tendency in reason to prove he had the propensity to commit lewd and lascivious acts against a young girl when she was seven years old because the sexual assaults of C.S. and C.L. were "dissimilar" to the alleged sexual assault of the victim in this case. In his counsel's words: "Other than sheer speculation, the record is devoid of evidence showing that a man who allegedly forcibly and sexually assaults adult women also would be inclined to sexually molest a young child. Thus, the court abused its discretion by admitting the [C.S. and C.L.] propensity evidence under [Evidence Code] section 1108." We disagree.

The uncharged acts against C.S. and C.L. share significant similarities with molestations of the victim in this case. In each instance, defendant took advantage of his female victims when they were vulnerable. All three were sleeping when defendant initiated his assaults. And defendant seized on these opportunities when it was particularly risky to do so. As to the victim in this case, her mother was sleeping in the same bed when defendant molested the young girl. With C.S., defendant's wife was sleeping in a nearby room with the window open. With C.L., defendant returned to her house immediately after C.L.'s friend (who had just stopped the earlier assault) left. Thus, his prior offenses against C.S. and C.L. were relevant not only because they were sexual offenses, but also because they demonstrated his propensity to prey upon and sexually assault females when they were sleeping or otherwise particularly vulnerable and when it was risky to do so.

■ Defendant emphasizes that C.S. and C.L. were adults, whereas the victim in this case was a young minor. But the age differences do not make the prior offenses wholly irrelevant. Indeed, as we will discuss in connection with defendant's misconduct with teenage girls, the evidence suggested defendant does not differentiate based upon age at all. Moreover, "[t]he charged and uncharged crimes need not be sufficiently similar that evidence of the latter would be admissible under Evidence Code section 1101, otherwise Evidence Code section 1108 would serve no purpose. It is enough the charged and uncharged offenses are sex offenses as defined in section 1108." (*People v. Frazier* (2001) 89 Cal.App.4th 30, 40–41 [107 Cal.Rptr.2d 100], citing *People v. Falsetta, supra*, 21 Cal.4th at p. 916.)

In sum, the prior offense evidence had substantial probative value despite the differences in the ages of the females. (*People v. Fitch, supra*, 55 Cal.App.4th at p. 179 ["Evidence of a prior sexual offense is indisputably relevant in a prosecution for another sexual offense."].)

We also reject defendant's argument that the evidence of his sexual offenses against C.S. and C.L. was so prejudicial the court abused its discretion in not excluding it pursuant to Evidence Code section 352.

Defendant does not explain why evidence of his sexual offenses against C.S. and C.L. was, in his counsel's words, "extremely inflammatory" such that the evidence was unduly prejudicial within the meaning of Evidence Code section 352.

■ "The prejudice which exclusion of evidence under Evidence Code section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence. '[A]ll evidence which tends to prove guilt is prejudicial or damaging to the defendant's case. The stronger the evidence, the more it is "prejudicial." The "prejudice" referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues.' " (*People v. Karis* (1988) 46 Cal.3d 612, 638 [250 Cal.Rptr. 659, 758 P.2d 1189]; see *Vorse v. Sarasy, supra*, 53 Cal.App.4th at p. 1009.)

We agree with the trial court that the sex offense testimony of C.S. and C.L. was highly probative as to defendant's guilt of sexually molesting the victim in this case. We also agree that the nature of the prior sex offense evidence was not unduly prejudicial within the meaning of Evidence Code section 352 because it was not likely to inflame the jurors' emotions and thus was not likely to motivate them to use it, "not to logically evaluate the point upon which it [was] relevant, but to . . . punish [defendant] because of the jurors' emotional reaction." (*Vorse v. Sarasy, supra*, 53 Cal.App.4th at p. 1009.)

That the prior sexual offenses testimony, including that of the teenage girls, constituted, in defendant's words, "[m]ore than half of the witness testimony in this case . . . [r]oughly 53 percent," does not make it prejudicial within the meaning of Evidence Code section 352, nor did it compel the trial court to exclude it as an undue consumption of time. As we have explained, the evidence was highly probative of defendant's guilt of sexually molesting the victim in this case and, while damaging to defendant, it was not unduly prejudicial within the meaning of Evidence Code section 352.

The trial court properly exercised its discretion in allowing, pursuant to Evidence Code section 1108, the introduction of C.S.'s and C.L.'s testimony regarding defendant's prior sexual offenses against them.

## C

Likewise, the court did not abuse its discretion in allowing, pursuant to Evidence Code section 1101, introduction of the three teenage girls' testimony about defendant's sexual offenses against them.

■ Other crimes evidence is admissible to prove a fact other than disposition, such as intent, motive, or absence of mistake, if its relevance outweighs its potential prejudicial effect. (Evid. Code, §§ 352, 1101, subd. (b); *People v. Ewoldt* (1994) 7 Cal.4th 380, 404 [27 Cal.Rptr.2d 646, 867 P.2d 757].) The admissibility of such evidence "depends upon the materiality of the fact sought to be proved or disproved, the tendency of the uncharged crime to prove or disprove the material fact, and the existence of any policy requiring exclusion of the evidence. [Citation.]" (*People v. Catlin* (2001) 26 Cal.4th 81, 146 [109 Cal.Rptr.2d 31, 26 P.3d 357].)

Here, the trial court ruled defendant's acts involving the teenage girls were admissible under Evidence Code section 1101 as evidence of intent and absence of mistake, namely his touching the victim was not innocent or accidental.

■ Penal Code section 288, subdivision (a) punishes the willful commission of "any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child . . . ."

Defendant argues that his intent, or lack of mistake, was not in dispute; the sole issue was the victim's credibility and whether the jury would believe her version of the events. For this reason, he argues, the evidence of his sexual misconduct toward the teenage girls was not relevant. We disagree.

■ A not guilty plea puts at issue all elements of the charged offense. (*People v. Balcom* (1994) 7 Cal.4th 414, 422–423 [27 Cal.Rptr.2d 666, 867 P.2d 777]; *People v. Catlin, supra,* 26 Cal.4th at p. 146.) There is no requirement that a defendant dispute the element of intent before a prosecutor may introduce relevant evidence on the issue. (*People v. Ellers* (1980) 108 Cal.App.3d 943, 953 [166 Cal.Rptr. 888].) Thus, the " 'prosecution's burden to prove every element of the crime is not relieved by a defendant's tactical decision not to contest an essential element of the offense.' " (*People v. Ewoldt, supra,* 7 Cal.4th at p. 400, fn. 4, quoting *Estelle v. McGuire* (1991) 502 U.S. 62, 69 [116 L.Ed.2d 385, 397, 112 S.Ct. 475].)

■ The least degree of similarity between an uncharged act and a charged offense is required to prove intent. (*People v. Ewoldt, supra,* 7 Cal.4th

at p. 402.) " '[T]he recurrence of a similar result . . . tends (increasingly with each instance) to negative accident or inadvertence or self-defense or good faith or other innocent mental state, and tends to establish (provisionally, at least, though not certainly) the presence of the normal, i.e., criminal, intent accompanying such an act . . . .' [Citation.] In order to be admissible to prove intent, the uncharged misconduct must be sufficiently similar to support the inference that the defendant ' "probably harbor[ed] the same intent in each instance." [Citations.]' [Citation.]" (*Ibid.*)

Defendant's misconduct against the teenagers was sufficiently similar to his charged conduct to show his touching of the victim was willful and sexual, and not a mistake that was misinterpreted by the victim.

He repeatedly committed sex offenses against underage girls in an aggressive, opportunistic, and risky pursuit of his sexual gratification. He touched the teenagers in an inappropriate and sexual manner, often when an adult was nearby. He repeatedly looked at and commented upon their developing bodies in a sexual manner. Such repeated actions and comments showed that they were intentional and sexual, and not misinterpreted or misconstrued by the teenagers. The actions and comments also showed defendant did not discriminate based on the age of his victims—even those who were underage or not fully developed physically.

Thus, the evidence was relevant to show defendant's intent to touch the victim in this case in a sexual manner, and his lack of mistake or accident.

For the reasons stated regarding the testimony of C.S. and C.L., the trial court did not abuse its discretion in finding the probative value of the teenagers' testimony was not outweighed by its prejudicial effect within the meaning of Evidence Code section 352.

The trial court properly allowed introduction of the teenagers' testimony regarding defendant's sexual molestations of them.

II*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 302.

## DISPOSITION

The victim restitution order is vacated, and the judgment is affirmed in all other respects. The matter is remanded to the trial court for the limited purpose of conducting a victim restitution hearing. Following the hearing, the trial court shall amend the abstract of judgment to reflect the amount of victim restitution, if any, ordered by the court; and shall send a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.

Sims, J., and Cantil-Sakauye, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 17, 2010, S182055.