Filed 12/23/20  P. v. Miron CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br>ANTHONY BENJAMIN MIRON,<br>        Defendant and Appellant. | A155462<br><br>(San Mateo County<br>Super. Ct. No. 17NF009738A) |

Anthony Benjamin Miron was convicted by a jury of multiple counts of committing a lewd act upon a child under 14 years old.  He contends the court improperly admitted evidence of his conviction for a prior sex offense.  He also argues his trial counsel was ineffective for failing to object to prosecution questioning of two witnesses and to a purported misstatement of law in the prosecutor's closing argument.  We disagree and affirm.

### BACKGROUND

In July 2018, Miron was charged with three counts of lewd and lascivious conduct upon a child (Pen. Code, § 288, subd. (a)).  For each count, it was alleged that Miron had been convicted of a prior sex offense (Pen. Code, § 1203.066, subd. (a)(5)).  Two prior serious felonies, two prior strikes, and three prior prison terms were also alleged.

Sisters Mariel and M. were responsible for doing their own laundry, and they did it together at a laundromat near their home.  One afternoon in

July 2017, M., who was then 11 years old, and Mariel, who was a few years M.'s senior, went to do their laundry.  Both M. and Mariel testified about that day's events at the laundromat.

M. stated that after placing their laundry in the dryer, she sat down on a bench inside the laundromat while Mariel went to visit the store next door. While M. was sitting on the bench, Miron, a man she did not know, sat next to her and started talking.  Miron asked M. her name, age, and whether she had a boyfriend.  She answered the questions and told him she was 11, which she later regretted.  Miron also said something about "getting pregnant" but M. could not remember it all.  She understood the comment had something to do with sex, and it made her uncomfortable.  Miron then kissed M.'s cheek "once or twice," which added to her discomfort.  She scooted away from Miron and left the bench when, minutes later, Mariel returned to the laundromat. M. joined her sister, who was on her phone and checking the laundry, and told her what happened.  Miron continued to follow and watch M. in the laundromat.  Mariel described M. as "scared and confused" and said M. told her that the man had twice kissed her on the cheek.  The girls did not immediately leave the laundromat.  M. wanted to, but she did not want to leave her sister alone with Miron out of fear he would do something to her. They left when their laundry was done.  On the way out, M. saw Miron at the door and "started speed walking out" of the laundromat.

At home, the girls told their mother what had happened.  M. felt uncomfortable because she did not like what occurred and did not want to talk about it.  M.'s mother, who also testified, said M. "cr[ied] hysterically" and "her face looked like she was panicked" when they spoke.  Eventually, M.'s mother persuaded her to file a report with the police.

At the police station, M. spoke with Officer Jeffrey Lee of the South San Francisco Police Department, who also testified at trial. Video of her interview was played to the jury. In the interview M. told Officer Lee that she was sitting on the bench when Miron came and sat next to her. Miron asked her age and if she had a boyfriend, and made a comment that he would do something but she would get pregnant. M. understood the comment to be referring to intercourse. M. said Miron touched her leg, brushing her upper thigh with his finger and then moved towards her knee. M. reported that Miron kissed her cheek twice despite her attempt to back away from him. The touching made her feel awkward and scared. After the kisses, Miron stopped talking and M. got up to look for her sister. After she walked over to her sister, who was talking on her phone, Miron followed and stood next to them. As they finished their laundry, Miron watched them from the bench. When they left, Miron got up to open the door for them and M. ran home.

Days later, Officer Lee reviewed video from the laundromat's surveillance system. At trial, Officer Lee described the video and clips were played for the jury. The video showed the sisters entered the laundromat around 4:18 p.m. After some time, Miron and an adult female companion walked in and stood around for a while. Shortly after 4:30 p.m., Miron's companion left, and so did Mariel. Miron walked over to the bench at the front of the laundromat and sat down next to M. The two appeared to talk. M. stood up, walked to the rear of the laundromat, and then returned to the bench. After some time, Mariel came back. Miron tapped M.'s shoulder and touched her cheek with his right hand. As he did this, he placed his left hand on M.'s right leg. Miron then grabbed M.'s right hand, brought her hand to his mouth, and kissed it. Minutes later, Miron looked around, scooted toward M., leaned in, touched her face and kissed M. on the cheek. Then, he kissed

3

her a second time.  After that, M. got up and moved to the rear of the laundromat next to her sister who was standing by a folding table and talking on her phone.  Miron approached the girls and stood next to them for a while before leaving the building.  He lingered outside for several minutes but eventually re-entered the laundromat and stood near the entrance.  Miron opened the door for the girls as they left and touched M.'s shoulder on her way out.

At the conclusion of the prosecution testimony, the jury was read a stipulation that Miron had been previously convicted of a sex offense.

Miron testified on his own behalf, and stated on the day M. and Mariel visited the laundromat, he was there with his fiancée doing laundry.  He said he "looked pretty rough," and M. approached him, commented that she was a princess and he was a frog, and invited him to kiss her hand so he could become a prince.  He thought she was playing around with him.  Miron said he did not know M.'s age but knew she was a minor.  He disputed that M. ever told him she was 11 years old and said she never told him her age.  He testified, "You really want to know the truth?  [¶] . . . [¶]  She told me she was six years old."  He admitted to kissing M.'s hand knowing she was young.  When asked if her princess and frog comments led him to kiss her hand, he responded, "I've seen a video.  I'm pretty much—I can clear that up as well."  He explained, "I reached over, and [M.] had raised her hand so I can touch her hand and play kiss it.  It was a playing—it was a playing at the time."  Later, he explained, "I didn't rush, all right, right out and—grab the hand and kiss her.  She was playing with me.  You can see the video.  She reached to my hand to kiss it, and she met my hand half and half."  When asked if there was sexual intent behind the kiss, Miron responded, "I have three daughters.  I have one son.  Two marriages.  I don't think that was very

4

sexual intent whatsoever, no." He added, "I believe that . . . I'm not aroused of any kissing or touching as I am accused . . . of." He added that he was attracted to adult females. Miron again denied kissing M.'s hand out of pleasure and emphasized that M. "came to play." Miron also acknowledged he kissed M. twice on the cheek but said he did not act out of lust. When asked if M. had asked for those kisses, he responded, "Let's just put it this way. . . . [S]he said the hand, then she . . . implied, okay, the cheek, okay."

Miron admitted he was previously convicted of assault with intent to commit rape but distinguished the prior offense because it involved an adult woman. He also admitted to three other prior convictions.

On rebuttal, Officer Lee testified about his interview with Miron after arresting him  The jury watched the video of the interview. In the interview, Miron told Officer Lee he was at the laundromat around 2:00 or 3:00 p.m. but not at 4:00 p.m. He repeatedly denied he ever sat on the bench talking to a young girl. Eventually, he acknowledged there was a young girl accompanied by her mother who sat next to him on the bench. He believed the girl was 12 to 15 years old. Miron denied he kissed the girl or touched her in any way. He said he did not pay any attention to the girl. Officer Lee told Miron there was surveillance video showing he sat on the bench next to a young girl and kissed the girl's hand and twice kissed her cheek. The officer told Miron he had an opportunity to be truthful. Miron responded, "[L]et me think about this." When Officer Lee again asked Miron about kissing the girl, Miron asked if it was the girl's birthday. Once again, he denied kissing the girl. He also denied talking with the girl about having a boyfriend. He claimed he could not remember what happened, then admitted he had not been telling Officer Lee the truth. He said he may have whispered something in the girl's ear but did not remember kissing her.

5

The jury found Miron guilty on all counts.  The trial court found his prior strike allegations to be true.  Miron was sentenced to state prison for 22 years.  This appeal followed.

## DISCUSSION

### A.    Prior Sex Offense Evidence

Miron argues the trial court abused its discretion when pursuant to Evidence Code section 1108[1] it admitted his 1984 conviction for assault with intent to commit rape.  He further contends the trial court erroneously failed to conduct a balancing test on the record pursuant to section 352.  On all points, we disagree.

Pursuant to section 1108, the People moved in limine to admit evidence of Miron's 1984 conviction for assault with intent to commit rape.  Miron opposed, and the motion was submitted.  Later that day, in the course of ruling on other pretrial issues, the court stated, "Returning to the 1108 motion, I had a chance to review that.  And, at this point, I'm inclined to allow it."

During trial, the following stipulation was read to the jury: "On August 17th, 1984, in San Francisco County, [Miron] was convicted of a violation of assault with intent to commit rape of an adult female, said offense having occurred on June 7th, 1984.  He was sentenced on October 10th, 1984."  Miron also admitted the conviction during cross-examination.

Pursuant to CALCRIM No. 1191A, the jury was instructed as follows: "The People presented evidence that the defendant committed the crime of assault with intent to commit rape of an adult female which was not charged in this case.  This crime is defined for you in these instructions.  You may

---

[1] All statutory references are to the Evidence Code unless otherwise stated.

consider this evidence only if the People have proved by a preponderance of the evidence that the Defendant, in fact, committed the uncharged offense. [¶] Proof by a preponderance of the evidence is a different burden of proof from proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true. [¶] If the People have not met this burden of proof, you must disregard this evidence entirely. If you decide that the defendant committed the uncharged offense, you may but are not required to conclude from that evidence that the Defendant was disposed or inclined to commit sexual offenses and based on that decision also conclude that the Defendant was likely to commit and did commit a lewd or lascivious act on a child under the age of 14 years as charged here. [¶] If you conclude that the defendant committed the uncharged offense, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the Defendant is guilty of committing a lewd or lascivious act on a child under the age of 14 years. The People must still prove the charges beyond a reasonable doubt. Do not consider this evidence for any other purpose."

Evidence the defendant committed a prior crime is generally inadmissible to prove the defendant likely committed a later crime. (§ 1101, subd. (a).)[2] However, section 1108, subdivision (a), provides an exception to this rule and allows admission of evidence of a prior sex offense when a defendant is charged with a sex crime. (§ 1108, subd. (a).) To prevent unfair misuse of such propensity evidence, the trial court must analyze whether it is

---

[2] Section 1101 allows the introduction of prior crime evidence when relevant to prove some fact such as motive, opportunity, intent or the lack of consent. (§ 1101, subd. (b).)

7

admissible under section 352. (*Ibid*.; *People v. Falsetta* (1999) 21 Cal.4th 903, 916-918, 920.)

Evidence of a prior sex offense should be excluded under section 352 "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (§ 352.) We review a trial court's decision to admit evidence pursuant to section 1108 and its application of section 352 for an abuse of discretion. (*People v. Hollie* (2010) 180 Cal.App.4th 1262, 1274.) "We will not overturn or disturb a trial court's exercise of its discretion under section 352 in the absence of manifest abuse, upon a finding that its decision was palpably arbitrary, capricious and patently absurd." (*People v. Jennings* (2000) 81 Cal.App.4th 1301, 1314.)

Here, the trial court did not abuse its discretion when it admitted Miron's prior sex offense. The Legislature enacted section 1108 because it found "that persons who commit sex offenses often have a propensity to commit sex crimes against more than one victim." (*People v. Escudero* (2010) 183 Cal.App.4th 302, 305-306 (*Escudero*).) "With the enactment of section 1108, the Legislature 'declared that the willingness to commit a sexual offense is not common to most individuals; thus, evidence of any prior sexual offenses is particularly probative and necessary for determining the credibility of the witness.' " (*People v. Soto* (1998) 64 Cal.App.4th 966, 983 (*Soto*); *Escudero*, *supra*, 183 Cal.App.4th at p. 306 [evidence of prior sex offenses is presumed to be admissible to assist trier of fact in evaluating the credibility of the victim and the defendant].) Thus, evidence of Miron's prior sex offense is considered probative of his propensity to commit lewd acts upon M. for sexual gratification and could be reasonably admitted.

8

But Miron says balancing the section 352 considerations should have resulted in exclusion of the prior sex offense. He argues it had weak probative value, was highly inflammatory, and too remote in time, and cites several cases to support his assertions. We disagree, and the cases cited by Miron are factually inapposite and do not compel a contrary conclusion.

We are not persuaded that the prior sex offense had little probative value based on the differences between the victim (an adult woman) and the circumstances surrounding it and the charged offenses against M. "The charged and uncharged crimes need not be sufficiently similar that evidence of the latter would be admissible under Evidence Code section 1101, otherwise Evidence Code section 1108 would serve no purpose. It is enough the charged and uncharged offenses are sex offenses as defined in section 1108." (*People v. Frazier* (2001) 89 Cal.App.4th 30, 40-41, 43 [no abuse of discretion to admit evidence of the defendant's uncharged acts of sodomy and forcible oral copulation of his six-year-old cousin even though they were different from the charged act of touching the bare buttocks of his nine-year-old niece].) " 'Many sex offenders are not "specialists," and commit a variety of offenses which differ in specific character.' " (*Soto, supra,* 64 Cal.App.4th at p. 984.) Here, since the prior sex offense evidence involved another female and also showed Miron possessed deviant sexual urges, it was similar enough to the charged offense to have probative value. Moreover, while lack of similarity is relevant, "that factor is not dispositive." (*People v. Merriman* (2014) 60 Cal.4th 1, 42.) The differences between the two cases here, although relevant to the exercise of discretion under section 352, are not dispositive of whether the evidence meets the requirements for admissibility under section 1108.

We are also not convinced that evidence of the prior sex offense was too inflammatory.  To apply this factor, we consider "whether the evidence inflames the jurors' emotions, motivating them to use the information, not to evaluate logically the point upon which it is relevant, but to reward or punish the defense because of the jurors' emotional reaction." (*People v. Valdez* (2012) 55 Cal.4th 82, 145.)  While the evidence of the prior sex offense was harmful to Miron, there is no reason to believe it confused the jury or caused them to decide the case on an improper basis.  Only the dates and fact of the conviction and specification of the charged offense were presented.  There was no detail about Miron's conduct that could have elicited a visceral or emotional response from the jury.  Further, the jurors were instructed that they "may but [were] not required" to conclude Miron was disposed to commit sexual offenses and that drawing such a conclusion was "only one factor to consider with all the other evidence."  In light of the plain presentation of the evidence and the instruction, we do not consider the evidence highly inflammatory.

Nor was the prior sex offense too remote.  " 'No specific time limits have been established for determining when an uncharged offense is so remote as to be inadmissible.' " (*People v. Robertson* (2012) 208 Cal.App.4th 965, 992.) "Numerous cases have upheld admission pursuant to . . . section 1108 of prior sexual crimes that occurred decades before the current offenses." (*Id.* at pp. 992-993 [no error in admitting prior sexual assault conviction from more than 30 years ago]; *People v. Branch* (2001) 91 Cal.App.4th 274, 284 [upholding admission of a sex crime committed 30 years before charged offense].) Accordingly, the 34-year span between the prior sex offense and the charged offense did not render it inadmissible.

The evidence was not unduly prejudicial. Under section 352, evidence should be excluded where its probative value is "substantially outweighed" by the "probability" that its admission will create a "substantial" danger of "undue" prejudice. (§ 352.) "To determine whether section 1108 evidence is admissible, trial courts must engage in a 'careful weighing process' under section 352. [Citation.] 'Rather than admit or exclude every sex offense a defendant commits, trial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense.' " (*People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 823-824).) These factors could reasonably be weighed here in favor of admission. (See *Escudero*, *supra*, 183 Cal.App.4th at pp. 306, 312-313 [admitting evidence of defendant's sexual assaults against two adult women at trial in which defendant was charged with committing lewd acts on a seven year old and rejecting argument that evidence of the sexual assaults was unduly prejudicial].)

Miron also argues the court erred "because it failed to state the evidentiary purpose of the prior act and failed to conduct a balancing test on the record." It is true the trial court gave no detailed explanation for admission of the prior sex offense, nor did it discuss how it weighed the section 352 factors. But the absence of such an explanation is not error.

11

Miron cites no authority that requires a trial court to state "the evidentiary purpose of a prior sex offense" or the "basis regarding the admissibility of [a defendant's prior] offense." It is clear that the prosecutor sought to admit the prior sex offense to show Miron's propensity to commit such crimes. Based on the admission of the evidence pursuant to section 1108, it is equally clear that Miron's propensity was the purpose for which it was admitted, and the court's instructions to the jury stated as much.

A trial court is not required to " 'expressly weigh prejudice against probative value or even expressly state that it has done so, if the record as a whole shows . . . the court was aware of and performed its balancing function under Evidence Code section 352.' " (*People v. Lewis* (2009) 46 Cal.4th 1255, 1285; *People v. Silveria* (2020) 10 Cal.5th 195, 275.) The record demonstrates the court's awareness. The prosecutor's motion in limine presented the legal standard for admission of the prior sex offense and referenced section 352. The motion expressly stated that the court "must engage in a careful weighing process under section 352," and over the course of three pages of briefing advocated how that weighing should occur. The parties argued the issue and invoked section 352 considerations throughout. Even Miron acknowledges, "the defense and prosecution both argued why the factors of remoteness in time and factual dissimilarities either rendered the 1984 conviction inadmissible or admissible. Furthermore, both sides used cases that conducted a section 352 analysis of the admissibility of prior acts under section 1108, to support their arguments." On this record, we presume the court understood its responsibilities under section 352 to balance the proffered evidence's probative value against its prejudicial effect. We also presume the court weighed those factors before it decided to admit the prior conviction.

12

In any event, even if the prior sex offense evidence was erroneously admitted for whatever reason, we would conclude the error was harmless. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) Even without the prior sex offense, the evidence of Miron's guilt was overwhelming. M.'s testimony that Miron said something about "getting pregnant" and that she understood the comments to refer to intercourse revealed the sexual nature of Miron's conduct. As M.'s police station interview and surveillance video showed, the verbal exchange between the two was followed by Miron intimately touching M. He caressed her cheek, brushed her leg from her upper thigh to knee, took M.'s hand to his mouth and kissed it. He gave M. two kisses on her cheek and looked around the laundromat before doing so. Further, when he was examined about his actions at trial, the jury could reasonably infer from his evasiveness and responses that Miron was aware his behavior was taboo and not innocent or harmless game playing. In his post-arrest interview with Officer Lee, Miron first denied being in the laundromat at the time of the incident and repeatedly denied that he touched or kissed M. It was only after he was told of the existence of surveillance video that he reconsidered his answers and acknowledged his presence in the laundromat while M. was there. At trial, he admitted touching and kissing M. The jury could reasonably reject Miron's description of a game the two were playing, especially after viewing his post-arrest interview. There was ample evidence to support the jury's finding that Miron acted with sexual intent. It is not reasonably probable that Miron would have obtained a more favorable result if the jury did not have evidence of his prior sex offense.

**B.      Ineffective Assistance of Counsel**

Under the Sixth Amendment, all criminal defendants have a constitutional right to competent legal representation. (*Strickland v.*

*Washington* (1984) 466 U.S. 668, 687.)  To establish ineffective assistance of counsel, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient performance was prejudicial.  (*People v. Brown* (2014) 59 Cal.4th 86, 109.)  "Prejudice exists where there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different."  (*People v. Benavides* (2005) 35 Cal.4th 69, 93.)  A " ' "reasonable probability is defined as one that undermines confidence in the verdict." ' "  (*People v. Carrasco* (2014) 59 Cal.4th 924, 982 (*Carrasco*).)

Miron contends that he was deprived of his right to effective assistance of counsel because he was prejudiced when his trial counsel did not object at two points during trial.  First, he asserts trial counsel should have objected to the prosecutor's questions to M. and her mother regarding their feelings surrounding the events at the laundromat.  He says their responses were barely relevant and "extremely inflammatory."  Second, Miron states his counsel should have objected to the prosecutor's assertion in closing argument that Miron's prior non-sex offense convictions which were admitted for impeachment could be used to establish the element of intent for the charged offenses.  He says this misstatement of law gave the jury additional and improper evidence to use in evaluating Miron's mental state.

We reject both contentions.  Here, we " 'need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed.' "  (*Carrasco, supra*, 59 Cal.4th at p. 982.)  Even if we assume without deciding counsel was deficient for the reasons raised, Miron cannot show prejudice on this record.  Had trial

14

counsel raised these objections and the court sustained them, the result would have been no different for the same reasons discussed above in our harmless error analysis of the admission of Miron's prior sex offense.

## DISPOSITION

The judgment is affirmed.

_____
Siggins, P.J.

WE CONCUR:


_____
Petrou, J.


_____
Jackson, J.


*People v. Miron*, A155462

16