Filed 6/12/14  P. v. Hernandez CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE


THE PEOPLE,

    Plaintiff and Respondent,

    v.

JHONATAN HERNANDEZ,

    Defendant and Appellant.

_____/

A137567

(Contra Costa County
Super. Ct. No. 51113315)

    A jury convicted appellant Jhonatan A. Hernandez of committing a lewd or lascivious act on Jane Doe, a child under 14 years old (Pen. Code, § 288, subd. (a))[1] and the trial court sentenced him to state prison.  Hernandez appeals.  He contends: (1) trial counsel was ineffective for failing to request CALCRIM No. 3426, which concerns the effect of a defendant's voluntary intoxication on the ability to form the specific intent to commit a crime; (2) the court erred by admitting evidence of his prior uncharged sexual conduct pursuant to Evidence Code sections 1101 and 1108; (3) the court erred by sentencing him to prison instead of placing him on probation; and (4) this court should review sealed material to determine whether the trial court ruled properly on various evidentiary issues.

    We have reviewed the sealed material.  We affirm.

---

[1]    Unless otherwise noted, all further statutory references are to the Penal Code.

1

FACTUAL AND PROCEDURAL BACKGROUND

We provide an overview of the facts here.  We provide additional factual and procedural details as germane to the discussion of Hernandez's specific claims.

*Prosecution Evidence*

In June 2011, then eight-year-old Doe was living in a three-bedroom house in Richmond with her mother, M.R., her mother's boyfriend, Hernandez, her older half brother, and younger half sister.  Each of M.R.'s children had a different father; Hernandez was the father of Doe's half sister.  Hernandez and M.R. slept in one bedroom.  Doe's aunt slept in a second bedroom.  Doe and her brother slept in separate beds in the third bedroom.  Sometimes Doe shared a bed with her half sister.

Hernandez babysat the children while M.R. worked, but he never watched them at nighttime.  Hernandez hit Doe on the hands when she did not listen to him.  At about 10:00 p.m. on an evening in June 2011, M.R. went dancing with Doe's aunt and a few others.  Hernandez stayed home with the children.  Before she left, M.R. told the children to sleep in their own beds and to close their bedroom door.  After the group left to go dancing, Hernandez told the children to go to sleep and went to his friend's house.

After watching television in the living room, Doe went to sleep in her bed wearing a pajama shirt, and pants and underwear.  Doe's half sister was in Doe's bed.  Doe's half brother was asleep in his own bed.  At some point, Hernandez returned home and went into Doe's room.  He was wearing "[o]nly a shirt" and was naked from the waist down.  Doe "felt someone was pulling [her] pants" and underwear down her thighs.  Doe pretended to be asleep, but she kicked Hernandez and tried to pull up her pants.  Hernandez tried three times to pull down Doe's pants and underwear; he also pulled her legs "closer to him."  While this was happening, Doe was scared "that something could happen" to her.  Eventually Doe "woke up and he just left.  Then he came back.  And he had clothes on . . . . And he said he forgot his phone."  Hernandez told Doe to go to sleep.

Crying, Doe woke up her half brother and told him Hernandez was naked and "was trying to touch her."  Doe tried, unsuccessfully, to lock her bedroom door because she was scared.  When M.R. came home at approximately 2:30 a.m., she found

2

Hernandez watching television in their bedroom. Doe ran out of her bedroom. While crying, Doe told her mother what happened even though she "felt a little scared that something might happen to [her]." M.R. confronted Hernandez. They yelled at each other and M.R. called the police. Hernandez left the house.

Shortly thereafter, Richmond Police Officer Chris Decious responded to a report of a sexual assault of a young child and stopped Hernandez a few blocks from M.R.'s house. There was an "odor of alcoholic beverage" on Hernandez's breath; it appeared Hernandez had been drinking, but he seemed "mellow," "relatively calm[,]" and able to communicate. Officer Decious did not remember Hernandez stumbling or slurring his words.

Officer Decious spoke with Doe at her house. Doe told Officer Decious she went to sleep and woke up to the feeling of someone — whom she identified as Hernandez — pulling on her ankles toward the foot of the bed. Doe could "feel that her pajama bottoms were halfway down her thigh, so they had been, at some point, pulled down below her waist and they were down halfway on her thigh." Doe told Officer Decious she was scared Hernandez was going to do something "bad." She explained that she yelled and Hernandez left the room, but that he later returned to retrieve his cell phone. Doe said Hernandez was wearing only a white t-shirt. Officer Decious also spoke with M.R. and Doe's half brother; their statements were consistent with Doe's. Doe's statements during an interview at the police station, and her statements during a Children's Interview Center (CIC) interview, were virtually identical to what she told Officer Decious at her house.[2]

Officer Decious arrested Hernandez and police officers interviewed him at the police station. Hernandez told the officers he had six or seven beers the night of the incident and at about 11:00 p.m., he went to the children's bedroom to pick up his daughter, Doe's half sister. He was fully clothed. He kneeled on the side of the bed and when he went to pick up his daughter, he touched or scraped against Doe. Hernandez

---

[2]     The prosecution played DVD recordings of Doe's police and CIC interviews for the jury.

3

explained that when he brushed up against Doe — who he admitted "looks like a woman" — he felt "nothing" and "didn't do it with any bad intentions." He claimed M.R. and her family were "setting him up."

Later, however, he said he "liked it" and that doing it gave him "a good feeling." Hernandez also said he touched Doe "and that was it. I touched her and nothing. . . . There was an excitement but it was then that I understood that what I was doing was wrong, so then I left them instead. I left them there and I went to my room. . . . Because my . . . situation confused me and I said, no." Hernandez told the officers he felt badly for touching Doe and admitted she kicked him because what he "was doing was bad." During the interview, Hernandez wrote an apology letter to Doe admitting he knew it was "wrong to have done what [he] did."[3]

Hernandez told the police officers the incident "was the second time." He said the "same thing" occurred with Doe "this year" when all of the children were sleeping in his bed. Hernandez stated the first incident involved "skin to skin" contact with Doe and pulling her pants "down below . . . but not all the way." During her CIC interview, however, Doe said the incident happened "[j]ust one time." When M.R. asked Doe "if this was the first time that he had tried to do that" Doe responded, "yes, . . . it was the first time."

*Defense Evidence*

Hernandez admitting touching Doe but "without any intention to do any harm to her." He explained he considers Doe "a little girl, and [his] daughter" and M.R. his wife even though they are not legally married. Hernandez and M.R. had been in a relationship for several years, had a daughter, and lived together in a house in Richmond. Hernandez frequently watched the three children at night and on the weekends.

Hernandez did not go dancing with M.R. on the night of the incident: he stayed home to watch the children. After M.R. left, Hernandez drank about three beers. Then

---

[3] The prosecution played a DVD of Hernandez's interview for the jury. Hernandez read the apology letter aloud when he testified.

4

he went to a friend's house. Before he left, he told the children — who were watching television — that they should go to bed when they were done watching TV. Hernandez drank four more beers at his friend's house. When he returned home at 11:30 p.m., the children were asleep in their bedroom. His daughter was sleeping in Doe's bed. The girls were "one on top of the other." Hernandez "wanted to take [his daughter] to her crib," where she normally slept.

Hernandez was wearing a white t-shirt and shorts. He went to the foot of the bed and put his knee on one side of the bed. He tried to untangle the blanket around the girls and reached over Doe to pick up her half sister. At that point, "Doe woke up frightened" because he had inadvertently moved her with his arm when he was reaching for his daughter. He did not touch Doe on purpose and did not try to remove her pants. Doe might have shouted something, but she never kicked him and only told him to leave the room. Hernandez did not return to the children's room.

Hernandez went to sleep in his bedroom and woke up around 3:00 a.m. when M.R. came home. Yelling and "furious," she told Hernandez to get out of the house because what he had done "was bad." Hernandez left the house because he "did not want to cause any more problems." The police arrested Hernandez near the house. During his police interview, he felt frightened, nervous, and pressured. When the officers asked Hernandez whether he liked touching Doe, he nodded "yes" even though he had already told them the truth; Hernandez claimed the officers pressured him and accused him of lying, so he made up things because he was tired and did not know what else to tell the officers. Hernandez denied telling the officers he liked touching Doe and explained various statements he made during the interview. He explained he wrote a letter to Doe at the officers' request but admitted no one suggested what he should write. In the letter, he asked Doe forgiveness for the "lies [the officers] were accusing [him] of" and apologized because the situation was shameful. According to Hernandez, the letter was not an admission or explanation because he had not done anything wrong.

Hernandez denied telling the police officers the exact "same thing" had happened once before. He might have said he touched "a part of [Doe's] body," but he never

5

specified "down there." Hernandez did tell the officers about another incident that occurred about a week before, when he and the children were in his bedroom watching TV. M.R.'s mother came in the bedroom and told the children they could not be there and that they should go to their own room. She also told M.R. the children could not be in Hernandez's bedroom. Hernandez felt accused because the children normally watched television in his room. He was not naked when M.R.'s mother came into the bedroom.

*Verdict and Sentencing*

A jury found Hernandez not guilty of committing a forcible lewd act on Doe, a child under 14 (§ 288, subd. (b)) but guilty of the lesser included offense of committing a lewd or lascivious act on a child under 14 years old (§ 288, subd. (a)). The court denied probation and sentenced Hernandez to the middle term of six years in state prison.

DISCUSSION

I.

*Hernandez's Ineffective Assistance of Counsel Claim Fails*

Hernandez claims trial counsel provided ineffective assistance by failing to request CALCRIM No. 3426, the jury instruction on voluntary intoxication.[4] To establish ineffective assistance of counsel, a defendant must demonstrate counsel's performance fell below an objective standard of reasonableness (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688) and "there is a reasonable probability that, but for counsel's

---

[4] In its standard form, CALCRIM No. 3426 provides in relevant part: "You may consider evidence, if any, of the defendant's voluntary intoxication only in a limited way. You may consider that evidence only in deciding whether the defendant acted [or failed to do an act] with _____ <insert specific intent or mental state required, . . . [¶] A person is *voluntarily intoxicated* if he . . . becomes intoxicated by willingly using any intoxicating drug, drink, or other substance knowing that it could produce an intoxicating effect, or willingly assuming the risk of that effect. [¶] . . . [¶] In connection with the charge of _____ <insert first charged offense requiring specific intent or mental state> the People have the burden of proving beyond a reasonable doubt that the defendant acted [or failed to act] with _____ <insert specific intent or mental state required, . . . If the People have not met this burden, you must find the defendant not guilty of _____ <insert first charged offense requiring specific intent or mental state>." [¶] . . . [¶] You may not consider evidence of voluntary intoxication for any other purpose. . . ."

6

unprofessional errors, the result of the proceeding would have been different." (*Id.* at p. 694; *People v. Ledesma* (2006) 39 Cal.4th 641, 746.) "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" (*People v. Weaver* (2001) 26 Cal.4th 876, 925.) We reject Hernandez's ineffective assistance of counsel claim because he has not demonstrated trial counsel's performance was constitutionally deficient or that he was prejudiced by counsel's failure to request CALCRIM No. 3426.

Section 288, subdivision (a) requires "'the specific intent of arousing, appealing to, or gratifying the lust of the child or the accused.'"[5] (*People v. Warner* (2006) 39 Cal.4th 548, 555, quoting *People v. Raley* (1992) 2 Cal.4th 870, 907, italics omitted.) "[E]vidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent. . . ." (§ 29.4, subd. (b).) Voluntary intoxication may negate the existence of a specific intent. (*People v. Williams* (1997) 16 Cal.4th 635, 677 (*Williams*).)

"[A] defendant is entitled to an instruction on voluntary intoxication 'only when there is substantial evidence of the defendant's voluntary intoxication and the intoxication affected the defendant's "actual formation of specific intent."' [Citation.]" (*People v. Roldan* (2005) 35 Cal.4th 646, 715, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390.) That the defendant may have been drinking before committing a crime does not establish intoxication or require the court to instruct the jury on voluntary intoxication. (*People v. Turville* (1959) 51 Cal.2d 620, 633-634, disapproved on another ground in *People v. Morse* (1964) 60 Cal.2d 631.) To be entitled to an instruction on voluntary intoxication, the defendant must show he consumed intoxicating substances, and that "he became intoxicated to the point he failed to form the requisite intent. . . ." (*People v. Ivans* (1992) 2 Cal.App.4th 1654, 1661.)

---

[5]     Section 288, subdivision (a) provides in relevant part, "any person who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison. . . ."

A trial court need not give a voluntary intoxication instruction where there is insufficient evidence the defendant's intoxication affected his ability to formulate the requisite intent. (See *Williams, supra,* 16 Cal.4th at p. 677 ["no evidence at all that voluntary intoxication had any effect on defendant's ability to formulate intent" where "defendant was 'probably spaced out' on the morning of the killings" and told the "police that around the time of the killings he was 'doped up' and 'smokin' pretty tough then'"]; *People v. Marshall* (1996) 13 Cal.4th 799, 847-848 [defendant was intoxicated but evidence of the effect on his state of mind was lacking]; *People v. Ramirez* (1990) 50 Cal.3d 1158, 1181 [no substantial evidence defendant's "beer drinking had any noticeable effect on his mental state or actions" where "[d]efendant purported to give a detailed account of" the incident]; *People v. Simpson* (1987) 192 Cal.App.3d 1360, 1370 [record did not suggest the defendant "was so intoxicated that he could not entertain a specific intent to inflict great bodily injury"].)

As in the above cases, Hernandez was not entitled to a voluntary intoxication instruction because there was no evidence he was so intoxicated that he was unable to form the requisite specific intent. Instead, the evidence demonstrated the alcohol he drank on the night of the incident did *not* affect his ability to form the requisite intent. After Hernandez tried to pull down Doe's pants and underwear three times and left her room, he had the presence of mind to remember he had left his phone in her room and he returned to retrieve it. When M.R. came home, Hernandez was awake and watching television. And when M.R. confronted Hernandez about what he had done, he complied with her direction to leave the house. In addition, Hernandez was "mellow," "relatively calm," and able to communicate when Officer Decious detained him. Hernandez's claim of ineffective assistance of counsel fails because the evidence did not support a jury instruction on voluntary intoxication. (*People v. Seaton* (2001) 26 Cal.4th 598, 666 [evidence of defendant's "intoxication did not strongly suggest that it prevented him from forming the intent to commit these crimes"].) "Counsel's failure to make a futile or unmeritorious . . . request is not ineffective assistance." (*People v. Szadziewicz* (2008) 161 Cal.App.4th 823, 836.)

8

Hernandez's ineffective assistance of counsel claim fails for the additional reason that he cannot demonstrate a reasonable probability the outcome would have been more favorable had trial counsel requested CALCRIM No. 3426. The evidence against Hernandez was strong: Doe testified Hernandez walked into her bedroom without wearing pants and repeatedly tried to pull down her underwear until she kicked him. Doe's demeanor and her prompt report of the sexual abuse to others after the incident bolstered her version of events and her report was consistent with her CIC and police interviews, and with her trial testimony. In addition, Hernandez admitted to the police he had touched Doe, he liked it, and he knew it was wrong to have done so.

We reject Hernandez's contention that "the jury never properly considered how [his] ingestion of a considerable amount of alcohol could have affected — and perhaps negated — the specific intent necessary for a section 288 conviction" because trial counsel did not request the voluntary intoxication instruction. As Hernandez himself recognizes, jurors have "common knowledge" of "the deleterious effects of alcohol ingestion." In addition, Hernandez testified he drank six or seven beers on the night of the incident and denied touching Doe in a sexual manner. The trial court instructed the jury that section 288 was a specific intent offense and defense counsel argued during closing argument Hernandez did not have the specific intent required to support a conviction.

II.

*The Court Did Not Err by Admitting Evidence of Hernandez's Prior Uncharged Sexual Misconduct Pursuant to Evidence Code Sections 1101 and 1108*

Next, Hernandez argues the court abused its discretion by admitting evidence of a prior "claimed sexual act" under Evidence Code sections 1101 and 1108. We review the court's ruling for abuse of discretion. (*People v. Hendrix* (2013) 214 Cal.App.4th 216, 238 (*Hendrix*); *People v. Loy* (2011) 52 Cal.4th 46, 61 (*Loy*).)

A.       The Prosecution's Motion to Admit Hernandez's Prior Sexual Misconduct

Before trial, the prosecution moved to admit evidence of two instances of sexual misconduct, including an incident earlier in June 2011 where — according to the

9

prosecution — Doe "was brought to sleep in [Hernandez]'s bed that he shares with [Doe's]'s mother. [Hernandez] and [Doe] fell asleep in the bed, and [Hernandez] was found naked sleeping with [Doe]. [Hernandez] confesses to touching the victim on this occasion inappropriately and knowing it was wrong. The family found out about it, and told [Doe']s mother told [*sic*] [Doe] to never sleep with [Hernandez] in the bed. She also told [Doe] to close and lock her bedroom when she was asleep. [Doe] was told not to let [Hernandez] near her, [Hernandez] was told to stay away, and third party witnesses heard [Doe's] mother tell [Hernandez] to stay away." The prosecution argued the evidence was admissible to show Hernandez's intent, knowledge, and modus operandi pursuant to Evidence Code sections 1101 and 1108 and to show his predisposition to commit the charged offense.

Over Hernandez's opposition the court admitted evidence of the early June 2011 incident. It determined the evidence was relevant under Evidence Code section 1101 because Hernandez put his "intent at issue" by pleading not guilty. The court also determined the evidence was admissible pursuant to Evidence Code section 1101 to establish "common scheme or design." Next, the court concluded the evidence was admissible pursuant to Evidence Code section 1108. Finally, the court determined the evidence was not more prejudicial than probative under Evidence Code section 352.

The prosecution played for the jury the recording of Hernandez's police interview where he admitted the "same thing" had recently happened before the incident at issue and told the officers he pulled Doe's pants "down below but not all the way" and had "skin to skin" contact with Doe. During her CIC interview, Doe said the incident happened "[j]ust one time" and at trial, Hernandez denied being naked in bed with Hernandez and testified he never touched Doe while she slept in his bed.

B.     The Evidence Was Admissible Under Evidence Code Sections 1101 and 1108

"As a general rule, evidence of uncharged crimes is inadmissible to prove the defendant had the propensity or disposition to commit the charged crime. [Citations.] . . . [¶] Evidence of other crimes is admissible, however," pursuant to Evidence Code

10

section 1101 "when relevant for a noncharacter purpose—that is, when it is relevant to prove some fact other than the defendant's criminal disposition, such as 'motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake [of fact] or accident.' [Citations.]" (*Hendrix, supra,* 214 Cal.App.4th at p. 238, citing Evid. Code, § 1101, subd. (b).) Notwithstanding Evidence Code section 1101, evidence of a relevant prior criminal act "may be excluded under section 352 if its probative value is 'substantially outweighed by the probability that its admission [would] . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.'" (*Hendrix, supra,* 214 Cal.App.4th at p. 238.)

Here, the evidence of the prior uncharged sexual misconduct was admissible under Evidence Code section 1101 to establish the disputed issue of intent. The "least degree of similarity between an uncharged act and a charged offense is required to prove intent." (*People v. Escudero* (2010) 183 Cal.App.4th 302, 313-314 (*Escudero*).) Here, the uncharged act and the charged offense were sufficiently similar. In both instances, Hernandez targeted Doe as she slept, and while Doe's mother was out of the house. In both instances, Hernandez was at least partially naked. Additionally, the instances occurred within a short time of each other. Like the trial court, we conclude Hernandez's prior misconduct against Doe "was sufficiently similar to his charged conduct to show his touching of the victim was willful and sexual, and not a mistake that was misinterpreted by the victim." (*Escudero, supra,* 183 Cal.App.4th at p. 314 [admission of the defendant's prior sexual misconduct to prove intent was not an abuse of discretion]; see also *People v. Whisenhunt* (2008) 44 Cal.4th 174, 204 [other-crime evidence admissible where defendant denied "the necessary intent for the charged crime because of mistake or accident"].)

The evidence was also admissible pursuant to Evidence Code section 1108, subdivision (a), which "authorizes admission of uncharged sexual offenses in a criminal action in which the defendant is accused of a sexual offense." (Simons, Cal. Evidence

11

Manual (2014 ed.) § 6:14, p. 486.)[6] We are not persuaded by Hernandez's claim that the prior incident was not admissible under Evidence Code section 1108 because it did not constitute a "'sexual offense'" or "criminal conduct." The prior instance constituted a violation of section 288, subdivision (a) because Hernandez pulled Doe's pants "down below" and because there was "skin to skin" contact between Hernandez and Doe. A violation of section 288, subdivision (a) "requires 'a touching of the body of a child under the age of 14, with the specific intent of arousing, appealing to, or gratifying the lust of the child or the accused. [Citations.] Touching of a sexual organ is not required.' [Citation.]" (*People v. Diaz* (1996) 41 Cal.App.4th 1424, 1427; see also CALCRIM No. 1110.)

Hernandez contends the court erred by not excluding the evidence under Evidence Code section 352, "which gives the trial court discretion to exclude evidence if its probative value is substantially outweighed by the probability that its admission will necessitate undue time consumption or create substantial danger of undue prejudice, confusing the issues, or misleading the jury." (*Loy, supra,* 52 Cal.4th at p. 61.) We disagree. As discussed above, the prior uncharged sexual offense was similar to — and occurred shortly before — the charged offense. Additionally, the uncharged conduct was not more inflammatory than the charged conduct. (See *People v. Poplar* (1999) 70 Cal.App.4th 1129, 1139.) Contrary to Hernandez's suggestion, nothing in the record suggests the jury was inclined to punish him for committing the prior uncharged sexual offense instead of, or in addition to, the charged offense. Finally, the court properly instructed the jury to use the evidence only for proper, limited purposes, and we "presume jurors 'generally understand and follow instructions.' [Citation.]" (*People v. Myles* (2012) 53 Cal.4th 1181, 1212 (*Myles*).) We conclude the court carefully

---

[6]     Evidence Code section 1108, subdivision (a), provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by [Evidence Code] Section 1101, if the evidence is not inadmissible pursuant to [Evidence Code] Section 352."

conducted its Evidence Code section 352 analysis and properly concluded the prejudicial impact of the evidence did not substantially outweigh its probative value. Having reached this result, we need not consider the parties' additional arguments regarding admissibility of the prior uncharged sexual misconduct.

### III.
### *The Court Did Not Abuse its Discretion by Denying Probation*

Third, Hernandez contends the court abused its discretion by denying probation. The "grant or denial of probation is within the trial court's discretion and the defendant bears a heavy burden when attempting to show an abuse of that discretion." (*People v. Aubrey* (1998) 65 Cal.App.4th 279, 282; *People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977.) A court abuses its discretion by denying probation when its order is "arbitrary or capricious, or '"exceeds the bounds of reason, all of the circumstances being considered."'[Citation.]" (*People v. Superior Court (Du)* (1992) 5 Cal.App.4th 822, 831.)

#### A. Sentencing Hearing

Before the sentencing hearing, the court ordered a psychologist to prepare a section 288.1 report on Hernandez's mental condition. Psychologist Robert Perez, Ph.D., evaluated Hernandez and prepared a report concluding Hernandez "would appear able to benefit from treatment in a program aimed at treatment of sexual offenders." Dr. Perez opined Hernandez's risk of "sexual recidivism" was low, and that releasing him on probation would not place Doe "at a risk for further physical harm." Defense counsel's lengthy and thorough mitigation statement requested probation and attached Dr. Perez's report and letters of support. Among other things, defense counsel argued the offense was "a drunken, spur of the moment act that [Hernandez] will forever regret" and was "not carried out with a high degree of sophistication."

The probation report recommended a prison sentence. According to the report, Hernandez was unsuitable for probation because his conduct was "violent and severe" and his release would pose "a threat, not only to the victim, but to the community at large." The prosecution requested a five-year prison sentence. After hearing argument,

13

the court denied probation and sentenced Hernandez to six years in state prison. The court analyzed each factor in Rules of Court, rule 4.414[7] and determined: (1) Doe was highly vulnerable and suffered emotional injury; (2) Hernandez was an active participant in the crime; (3) the crime involved planning and sophistication; and (4) Hernandez took advantage of a position of trust. The court also noted Hernandez: (1) committed a lewd act against Doe shortly before the offense at issue; (2) had difficulties with alcohol; (3) lacked remorse; and (4) posed a danger to society.

B. The Court Did Not Abuse Its Discretion by Denying Probation

To determine whether to place a defendant on probation or to impose a prison sentence, the court must consider "facts relating to the crime and facts relating to the defendant." (Rule 4.414.) The facts relating to the defendant include, but are not limited to, the "nature, seriousness, and circumstances of the crime as compared to other instances of the same crime"; the victim's vulnerability; whether the defendant inflicted physical or emotional injury on the victim; whether "the defendant was an active or a passive participant"; whether "the crime was committed because of an unusual circumstance, such as great provocation, which is unlikely to recur"; whether "the manner in which the crime was carried out demonstrated criminal sophistication or professionalism on the part of the defendant"; and whether "the defendant took advantage of a position of trust or confidence to commit the crime." (Rule 4.414(a).)

The facts relating to the defendant include, but are not limited to, the defendant's prior record; the defendant's willingness and ability to comply with terms of probation; whether the defendant is remorseful; and the likelihood the defendant will be a danger to others if he is not imprisoned. (Rule 4.414(b).) The court must state "the primary factor or factors" supporting "the exercise of discretion" (rule 4.406) but the court need not address the factors advanced by the defendant in his request for probation. (*People v. Simon* (1983) 144 Cal.App.3d 761, 766-767; *People v. Holguin* (1989) 213 Cal.App.3d 1308, 1317; Rule 4.409.) The court is deemed to have considered the criteria listed in the

---

[7] All further "rule" references are to the California Rules of Court.

sentencing rules "unless the record affirmatively reflects otherwise." (Rule 4.409; *Alvarez, supra,* 14 Cal.4th at pp. 977-978.)

Hernandez contends "a grant of probation was the only appropriate outcome in this case." We disagree. As the court observed, several factors favored probation, including Hernandez's lack of a criminal record and his willingness to comply with probationary terms. The court had ample grounds, however, for denying probation. Doe was a vulnerable victim: she was eight at the time of the offense and was sleeping in her bed when Hernandez — her mother's boyfriend — sexually molested her. (Rule 4.414(a)(3).) Hernandez also inflicted emotional injury on Doe: she was frightened when he molested her and cried after the incident, and she later attended counseling. (Rule 4.414(a)(4).) In addition to being an active participant in the crime, Hernandez took advantage of a position of trust because he was a father figure to Doe and because she relied on him as a caregiver. (Rule 4.414(a)(6), (9).) The factors relating to Hernandez also supported a denial of probation. Although Hernandez did not have a criminal record, there was evidence of a previous act of sexual misconduct shortly before the incident at issue. (Rule 4.414(b)(l).) In addition, there was evidence Hernandez was not remorseful and had not accepted responsibility for his actions because he denied wrongdoing at trial. (Rule 4.414(b)(7)).)

That another court may have reached a different conclusion does not demonstrate an abuse of discretion. In reviewing a trial court's denial of probation, "'it is not our function to substitute our judgment for that of the trial court. Our function is to determine whether the trial court's order granting [or denying] probation is arbitrary or capricious or exceeds the bounds of reason considering all the facts and circumstances.' [Citation.]" (*People v. Weaver* (2007) 149 Cal.App.4th 1301, 1311.) We cannot conclude the court's denial of probation was "'arbitrary or capricious'" or that it exceeded "'the bounds of reason.'" (*Id.* at p. 1311.)

## IV.
### *Review of the Sealed Material Demonstrates No Abuse of Discretion*

Hernandez asks this court to review sealed material "to determine whether the trial court ruled correctly and whether [he] was prejudiced." Because the sealed material was not "made available to him or his appellate counsel, [Hernandez] requests that this court conduct an independent review of these materials. He asserts that such review is necessary to ensure that the trial court's rulings did not infringe his right to due process." (See *Myles, supra,* 53 Cal.4th at pp. 1208-1209.) The People do not oppose the request.

Hernandez's counsel subpoenaed Doe's counseling records to attempt to impeach her with her statement that Hernandez had committed a prior sexual act against her. Defense counsel asked the court to conduct an in camera review of the records and the prosecution opposed the motion. During a July 18, 2012 in camera hearing with defense counsel present, the trial court reviewed the counseling records and ordered them sealed. (Welf. & Inst. Code, § 827.) The court ordered defense counsel to produce a redacted version of counsel's affidavit in support of the court's in camera review of the counseling records.

Defense counsel also subpoenaed the therapist who interviewed Doe at the CIC. The CIC moved to quash the subpoena and the court held a July 20, 2012 in camera hearing on the motion with defense counsel present. Following the hearing, the court granted the motion to quash, concluding the therapist's testimony would be duplicative under Evidence Code section 352. On July 25, 2012, the court held a hearing to determine whether to disclose Doe's counseling records. The court held an in camera hearing with Doe's therapist about the meaning of one statement in Doe's records. Then, with counsel present in court, the court announced it had found the majority of the counseling records irrelevant but ordered disclosure of the following sentence: "Writer inquired as to whether or not [the] last attempted molestation was [the] first time? Family replied, yes."

Having independently reviewed the sealed material, we conclude the court's rulings were neither an abuse of discretion nor a violation of Hernandez's due process

16

rights. (*Myles, supra,* 53 Cal.4th at pp. 1208-1209.) The trial court properly sealed Doe's counseling records. (See *J.E. v. Superior Court* (2014) 223 Cal.App.4th 1329, 1337 [noting the "strong public policy of confidentiality of juvenile records" and citing Welfare and Institutions Code section 827].) The disclosure of a portion of the counseling records was not an abuse of discretion, nor was the court's ruling granting the CIC's motion to quash because the therapist's testimony was duplicative under Evidence Code section 352. (*People v. Jacobs* (2007) 156 Cal.App.4th 728, 736.)

DISPOSITION

The judgment is affirmed.

_____

Jones, P.J.

We concur:

_____

Simons, J.

_____

Bruiniers, J.