Filed 8/2/13  P. v. Smith CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Placer)

----

| | |
|---|---|
| THE PEOPLE, | C071701 |
| Plaintiff and Respondent, | (Super. Ct. No. 62-108412) |
| v. | |
| DONALD ALBERT SMITH, | |
| Defendant and Appellant. | |

A jury found defendant Donald Albert Smith guilty of one count of a lewd and lascivious act upon a child under the age of 14 years.  (Pen. Code, § 288, subd. (a).)[1]  The trial court sentenced him to eight years in state prison.  On appeal, defendant contends the trial court abused its discretion in admitting prior convictions, erred in failing to instruct the jury on attempted lewd and lascivious acts on a child, and failed to obtain a waiver of his right to be present during a critical stage of the proceedings.  We shall affirm.

---

[1] Undesignated statutory references are to the Penal Code.

1

# FACTUAL BACKGROUND

## *The Incident*

Defendant moved to Auburn from Idaho with his adult son, his son's girlfriend Rebekah,  and their three children.  They all initially lived with Crystal W., who was a friend of Rebekah's.  Also living there were Crystal's boyfriend, his cousin, a friend, and Crystal's three minor children (two boys and the victim, eight-year-old Jane Doe No. 1 (Jane)).  Defendant was called "grandpa" by the children.  He normally slept on the living room couch.  By August 6, 2011, defendant was still staying at Crystal's Auburn apartment although defendant's son, Rebekah, and their children had moved out the week before.

Crystal was cleaning the kitchen that evening.  The children slept downstairs in the living room because their room was infested with bedbugs.  Two of the children, Jane's older brother and the cousin, were asleep on the couch while defendant drank Jack Daniels at the kitchen table.

Jane got permission from Crystal to lie down on the couch.  Jane went to the spot where defendant normally slept and fell asleep.  Later, defendant said he was tired and lay down on the sofa next to Jane.  When Crystal went to move Jane, defendant said, "No, she's fine, she can stay there."  Crystal expressed discomfort with the arrangement, but defendant told her, "No, no really, it's okay."  According to Crystal, Jane, defendant, and the two other children were all asleep on the couch when Crystal went to bed at 3:00 a.m.  Jane and defendant were sleeping on their sides, while Jane's brother slept head to head with Jane, and the cousin slept seated and leaning against the armrest.

The cousin was later awakened by Jane's crying.  Jane said she was cold and wanted all the blankets so she could move to the floor.  The cousin heard defendant tell Jane to lie down, go back to sleep, and that everything would be okay.  Jane moved to the

2

floor after one of her brothers told her to go there. The cousin heard nothing else that night.

The following day, Jane uncharacteristically rushed out of the house without eating breakfast. She did not return until lunchtime, when she barely ate any of her favorite lunch. Crystal noticed that defendant was close by every time Jane walked up to her. After lunch, the children were asked if they wanted to go swimming; Jane did not and did not want to be anywhere near defendant.

Regina P. lived next door to Crystal, and her daughter played with Jane every day. On August 7, 2011, while playing with Regina's daughter, Jane approached Regina and said she needed to talk to her. Regina asked if it could wait, but Jane insisted that she had to talk right now as it was important. The two walked together, and Jane told Regina that her Grandpa was touching her "inappropriately." Regina asked what this meant, and Jane replied that he touched her in places where she should not be touched.

Regina left Jane and walked to Crystal's apartment. As she passed defendant, he said, "I didn't do it." Regina met Crystal and told her they needed to address an important matter. As they walked towards Jane, Regina noticed defendant was talking to her. Defendant was about three feet from Jane, who "kind of had a disturbed look on her face." Crystal saw defendant whispering into Jane's ear; Jane had a look of "terror" on her face. Regina told Jane to come, and Jane ran to them. Regina told Jane to tell her mother what happened; Jane said defendant touched her "inappropriately." She said that while she slept, defendant's hands were all over her clothes and he had "humped" her leg.

Crystal returned home and told her boyfriend what Jane said. He then informed defendant of the accusation and told him to leave the house. Defendant got his belongings and left. Crystal did not call the police immediately because she wanted to be sure the charges were true. Crystal's sister called the police about 10 days later.

3

*The MDIC Interview*

Jane was interviewed by Fionna Tuttle at a Multidisciplinary Interview Center (MDIC) on August 18, 2011. Jane said she was eight years old and defendant touched her in places he was not supposed to. Jane was sleeping on the couch, with defendant lying next to her. She awakened in the middle of the night because defendant was touching her "here and right here." Defendant touched her "private" above the clothes. He said her name, and it "felt weird when he was doing it." Wanting to get off the couch, Jane rolled off and stayed on the carpet. Defendant tried to pick her up, but Jane said, "Mmm," so defendant left her alone. Jane then went upstairs to her mother's room, where she slept.

Jane's mother was asleep when Jane awoke the next morning, so she dressed and went out to play with her friends. Defendant said nothing when she saw him downstairs.

Jane first told her "Aunt" Regina about the incident. She told Regina that defendant touched her in "weird places." She then told her mother that defendant touched her "in those places" and "right here and right here." Her mother went to tell her boyfriend while Jane stayed with Regina.

Testifying, Jane could not remember being awakened by defendant that night or being touched by him. She did not really remember defendant. She recalled giving the MDIC interview and testified that everything she told the interviewer was the truth.

*Evidence Code Section 1108 Evidence*

Rebekah has three children, John Doe (John), Jane Doe No. 2 (Jane No. 2), and an infant, J.S. Joshua B. is John and Jane No. 2's father, while defendant's son is J.S.'s father. They lived in Idaho for around two years before relocating to California. In September 2011, after the family moved back to California, Joshua B. told Rebekah that there was an investigation involving their children. John later told Rebekah that defendant had him touch his private and then defendant touched John's private. Jane No.

4

2 told Rebekah that defendant touched her private area with a finger, there was rubbing, and he put something inside her.

John was eight years old when he testified at trial and seven during his MDIC interview. When living in Idaho, he saw defendant's "peep-peep" "[a]lmost every time." Defendant taught him "all of the bad thing," and "a lotta bad stuff." Defendant asked John to suck on his penis, but John refused. Defendant would take John's pants down and touch John's penis with his hand. He "would slap it around and play with it." He also had poison oak and touched John's private spot, causing him to get poison oak and go to a doctor. John was about five years old when defendant started talking about sex and six when the touching started. It also happened when John was four and living with the family in Auburn.

Jane No. 2 was five years old when she testified and gave her MDIC interview. She was four when she lived in Idaho. Defendant touched her on her "hoo-hoo," which was used for "peeing." Once, when her parents were at the store and her brother was asleep, defendant pulled down her capri pants, touched her with his hand, and then grabbed something in his hand and "stuck it through" her "hoo-hoo." It felt hard and was like "a thorn." Asked what it looked like, she said "[i]t only come from a tree." Her "hoo-hoo" was bleeding and her mother had to put a bandage on it.

Another time, she was in defendant's bedroom, next to his bed, when defendant pulled down her underwear and touched and poked her "hoo-hoo" with his finger. Defendant told her to touch his "hoo-hoo" next, but she ran when seeing that defendant was going to grab her arm and make her do it.

Once, when she was on defendant's bed in Idaho, he pulled down her underwear and kissed her "hoo-hoo" with his tongue. She then smacked defendant on his head. Defendant once pulled down his pants and told her to kiss and play with his penis. She also saw defendant play with her brother's penis.

5

The parties stipulated that defendant was previously convicted in Placer County for unlawful intercourse with a minor, a felony (former § 261.5, subd. (c)) and annoying and molesting a child, a misdemeanor (former § 647.6) on October 16, 2000.

## DISCUSSION

### I. Prior Uncharged Misconduct Evidence

Defendant contends the trial court abused its discretion in admitting his prior convictions for sexual misconduct with minors. We disagree.

Evidence Code Section 1108 provides, "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." (Evid. Code, § 1108, subd. (a); see *People v. Falsetta* (1999) 21 Cal.4th 903, 907, 922.) Pursuant to Evidence Code section 352, the court must consider factors such as relevance, similarity to the charged offense, the certainty of commission, remoteness, and the likelihood of distracting or inflaming the jury. (*Falsetta*, at p. 917.) We review a challenge to admission of prior bad acts under section 352 for abuse of discretion and will reverse only if the trial court's ruling was " 'arbitrary, whimsical, or capricious as a matter of law.' " (*People v. Branch* (2001) 91 Cal.App.4th 274, 282 (*Branch*).)

Defendant objected to the prosecution's motion in limine to admit defendant's 2000 misdemeanor conviction for annoying and molesting a child. He claimed the conviction was remote in time, highly prejudicial, involved different facts than the present case, and it was disputed whether the touching in the prior case was consensual.

The trial court found the prior offense was similar to the charged offense as both involved sexual acts on a minor. While the prior conviction took place more than 10 years ago, defendant was remanded to custody for a parole violation in 2002 and a

6

registration violation in 2007. Finally, noting the prior offense would be proven using evidence of the prior conviction rather than an "unadjudicated incident," the trial court granted the prosecution's motion to admit the prior conviction.

The trial court then pointed out to the prosecutor that defendant's prior conviction from 2000 of violating former Penal Code section 261.5 was also admissible pursuant to Evidence Code section 1108. The prosecutor asked to admit defendant's conviction for that offense. Defense counsel had no additional comments, and the trial court granted the prosecution's motion as to that offense as well.

The parties later stipulated that defendant was convicted of violating sections 261.5, subdivision (c) and 647.6 on October 16, 2000. The stipulation did not waive defendant's objection regarding the admissibility of the convictions.

Defendant claims the crimes were too dissimilar in nature to the charged offense to be relevant. In support of this claim, he notes the prior convictions stem from an incident in which defendant, then 45 years old, was seen having intercourse with a mentally disabled 16-year-old girl who had the mental capacity of a seven year old. The victim was a friend and neighbor, and the incident took place on a school ground in the open. According to defendant, an incident stemming from a sex act with a 16 year old could not show that defendant was predisposed to commit the charged offense, lewd and lascivious acts on a minor under the age of 14 (§ 288, subd. (a)), with a victim who was "substantially younger" than the victim in the prior offenses. Defendant also asserts the prior convictions were too remote, taking place more than 10 years before the charged offense, and "raised the potential for undue prejudice to [defendant] exponentially" by removing "any chance" he had of contesting the prior misconduct evidence involving John and Jane No. 2.

"The charged and uncharged crimes need not be sufficiently similar that evidence of the latter would be admissible under Evidence Code section 1101, otherwise Evidence

7

Code section 1108 would serve no purpose. It is enough the charged and uncharged offenses are sex offenses as defined in section 1108." (*People v. Frazier* (2001) 89 Cal.App.4th 30, 40-41, fn. omitted (*Frazier*).) Evidence of prior sex offenses has been admitted under section 1108 despite an age difference in the victims. (*People v. Escudero* (2010) 183 Cal.App.4th 302, 306, 311 [evidence of prior sexual assaults against adult women admitted to prove propensity to commit lewd and lascivious acts against young girl].) Both the prior and charged offenses involved sex with a minor and were among the offenses listed in Evidence Code section 1108. (Evid. Code, § 1108, subd. (d)(1)(A).) While the victim here in the prior offenses was 16, her mental age of seven years was close to the mental age of the eight-year-old victim in the present case. The age differential between the victims in the charged and uncharged offenses did not render the uncharged offense evidence inadmissible.

While the prior offenses occurred some 10 years before the offense at issue, "[n]o specific time limits have been established for determining when an uncharged offense is so remote as to be inadmissible. " (*Branch*, *supra*, 91 Cal.App.4th at p. 284.) An offense that occurred a little over 10 years ago is not something out of the "remote" past, especially when defendant served a two-year prison sentence for the prior offenses, and was returned to prison two additional times after his release. (*Frazier*, *supra*, 89 Cal.App.4th at p. 41 [sexual offenses occurring 15 or 16 years prior to the charged offenses still probative and not too remote]; accord, *People v. Waples* (2000) 79 Cal.App.4th 1389, 1393-1395 [prior sexual offenses 18 to 25 years earlier still probative].)

Nor can the prior convictions be considered prejudicial within the context of Evidence Code section 352. " 'The "prejudice" referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues. In applying

8

section 352, "prejudicial" is not synonymous with "damaging." ' " (*People v. Karis* (1988) 46 Cal.3d 612, 638.) The prior convictions were presented to the jury sanitized of their underlying facts. In light of the evidence regarding the charged offense as well as the other Evidence Code section 1108 evidence, it is inconceivable that the jury could be prejudiced by the mere existence of two prior convictions for sex offenses. It was not an abuse of discretion to admit the prior convictions.

## II. Lesser Included Offense Instruction

Defendant next claims the trial court prejudicially erred in rejecting trial counsel's request to instruct the jury on the lesser included offense of attempted lewd and lascivious acts on a child.

### A. *Evidence Presented*

"An instruction on a lesser included offense must be given only when the evidence warrants such an instruction. [Citation.] To warrant such an instruction, there must be substantial evidence of the lesser included offense, that is, 'evidence from which a rational trier of fact could find beyond a reasonable doubt' that the defendant committed the lesser offense. [Citation.] Speculation is insufficient to require the giving of an instruction on a lesser included offense. [Citations.] In addition, a lesser included instruction need not be given when there is no evidence that the offense is less than that charged." (*People v. Mendoza* (2000) 24 Cal.4th 130, 174.)

"[S]ection 288, subdivision (a), states [it is] a felony offense for any person who 'willfully and lewdly commits any lewd or lascivious act' on the body of a child under the age of 14, 'with the intent of arousing . . . the lust, passions, or sexual desires of that person or the child.' *Any* touching of a child under the age of 14 violates this section, even if the touching is outwardly innocuous and inoffensive, if it is accompanied by the *intent* to arouse or gratify the sexual desires of either the perpetrator or the victim. " (*People v. Lopez* (1998) 19 Cal.4th 282, 289.) "An attempt to commit a lewd act upon a

9

child requires both an intent to arouse, appeal to, or gratify 'the lust, passions, or sexual desires of [the defendant] or the child' [citations] 'and . . . a direct if possibly ineffectual step toward that goal—in other words, he attempted to violate section 288.' " (*People v. Crabtree* (2009) 169 Cal.App.4th 1293, 1322.)

Defendant bases his claim on alleged inconsistencies between the cousin's testimony and Jane's MDIC interview. According to the cousin's testimony, Jane woke up crying and wanted to take the blankets and go on the floor, finally doing so after one of her brothers told her to. In the MDIC interview, Jane first said that she fell off the couch, but later claimed to have rolled off the couch in order to avoid defendant. From this, defendant argues "the jury could have concluded that Jane, who was then eight years old, was either mistaken or untruthful in parts of her interview." He finds this argument "especially true" in light of the fact that terms used by Jane to describe the sexual assault to Regina and her mother—touching her "inappropriately" and "humping" her leg—were not used by her in the MDIC interview. Given the alleged problems with Jane's credibility, defendant claims "[s]ome jurors may have believed that under these circumstances [defendant] had not touched Jane at all as she described." He concludes, "one or more jurors may have decided [defendant] had the requisite intent because of his background, but had not actually touched her because of the inconsistencies between her interview and the other evidence."

Defendant's argument takes a simple inconsistency between one witness's testimony and the victim's MDIC interview regarding details of the night in question and speculates that jurors would use this to reject the victim's statements that defendant molested her. Such speculation is not substantial evidence warranting an instruction on a lesser included offense. Defendant's premise also fails to support his conclusion. If a juror rejected Jane's rendition as not credible, there remains no evidence for the juror to find that defendant took an ineffectual act towards molesting her. Presuming, as

10

defendant claims, a juror could infer an intent to molest on the basis of the uncharged misconduct evidence alone, there is still no evidence that defendant took some ineffectual act in accordance with that intent. Rather than finding defendant guilty of an attempted violation of section 288, subdivision (a), a juror reasoning in accordance with defendant's argument would find defendant not guilty of the charge.

Under the evidence presented, defendant was either guilty or not guilty of the charged offense. Since there was no evidence supporting the middle ground of an attempted violation of section 288, subdivision (a), the trial court correctly rejected defendant's request for instruction on attempt.

### B. Duty to Instruct on Attempt

Defendant also contends sections 663 and 1159 require a court to instruct sua sponte on attempt in every case, regardless of the state of the evidence.

Section 663 provides: "Any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was perpetrated by such person in pursuance of such attempt, unless the court, in its discretion, discharges the jury and directs the person to be tried for such crime."

Section 1159 provides: "The jury, or the judge if a jury trial is waived, may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, or of an attempt to commit the offense."

We disagree with the premise of defendant's argument, that he has a right to be convicted of attempt where the evidence shows the crime was completed. Sections 663 and 1159 only permit a jury's act of leniency to stand; they do not grant defendant any right to such leniency. (Cf. *People v. Baca* (1996) 48 Cal.App.4th 1703, 1707-1708 [while jurors have power to nullify, a defendant has no right to instruction on jury nullification]; see also *In re Sylvester C*. (2006) 137 Cal.App.4th 601, 610 [section 663 "designed to address the dilemma created when a defendant is charged only with an

11

attempt but the evidence at trial shows his attempt succeeded rather than failed"].) The rule in California is well established: A trial court must instruct sua sponte on a lesser included offense, including attempt, only where there is substantial evidence that only the lesser and not the greater offense was committed. (*People v. Breverman* (1998) 19 Cal.4th 142, 162.) As there was no substantial evidence of only an attempt, the trial court did not err in failing to instruct on attempt.

### III. Presence at Critical Stages

Defendant's final claim is that he was deprived of his right to be present at all critical stages of the prosecution. He is wrong.

### A. Background

Towards the end of the evidence, after the jury was excused, the parties and the trial court agreed to have the prosecutor draft a proposed stipulation regarding defendant's prior convictions, with both counsel to discuss the matter and have something for the court the following morning. The trial court directed counsel to appear at 8:00 a.m. the following morning to discuss jury instructions. After noting defendant may not arrive until 8:30 a.m., the trial court asked, "So the jury instructions, does he want to be here when we discuss that, or do you want to waive his presence for that?"

Defense counsel discussed the matter with defendant and told the court defendant would waive his presence. Asked whether this was correct, defendant said to the court, "Yes, sir." The following morning, when defendant was not present, the attorneys told the court they had a stipulation on the prior convictions.

The following stipulation was entered by the trial court: "The Court is informing the jury that the Defendant, Donald Albert Smith, was convicted of Penal Code Section 261.5(c), unlawful sexual intercourse with a minor, a felony, and Penal Code Section 647.6, annoying and molesting a child, a misdemeanor, on October 16th, 2000, in Placer

12

County case No. 62-014538." The stipulation was later read to the jury with no objection.

### B. Analysis

Under federal and state law, a defendant's personal presence is required if necessary for effective cross-examination in a proceeding, or if the defendant's presence would contribute to the fairness of a proceeding critical to the outcome of the trial, or if it would reasonably bear a substantial relation to the fullness of his opportunity to defend himself. (*People v. Cole* (2004) 33 Cal.4th 1158, 1231.)

Defendant claims the discussion regarding his prior convictions was a critical stage of the proceeding, and his waiver covered only his presence at the discussion on jury instructions. He claims his presence was critical because "had he been present the language of the stipulation likely would have been changed to indicate the age of the victim and that there was but a single victim, thereby contributing to the fairness of the trial."

The right of a defendant to be personally present does not extend to every court proceeding. As the Supreme Court noted, "neither the state nor the federal Constitution, nor the statutory requirement that a defendant be present at 'all . . . proceedings' (§ 977, subd. (b)(1)), provides a criminal defendant with the right to be personally present in chambers or at bench discussions outside the jury's presence on questions of law or other matters as to which his presence bears no reasonable, substantial relation to his opportunity to defend the charges against him." (*People v. Harris* (2008) 43 Cal.4th 1269, 1306, fn. omitted.) Defense counsel stipulated to the prior sexual misconduct convictions for strategic reasons. As such, defendant could not have meaningfully contributed to the stipulation, and his presence was not required. Even assuming his waiver did not cover the stipulation, there was no violation of defendant's right to be present at a critical stage of the prosecution.

## DISPOSITION

The judgment is affirmed.


_____BUTZ_____, Acting P. J.


We concur:


_____MURRAY_____, J.


_____HOCH_____, J.


14