Filed 8/9/22  P. v. Marshall CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E074212 |
| v. | (Super.Ct.No. FVI1502099) |
| NICKOLAS HIAWATHA MARSHALL, JR., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. Colin J. Bilash, Judge. Affirmed.

Gene D. Vorobyov, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta and Xavier Becerra, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C.

1

Ragland, Joy Utomi, and Stephanie H. Chow, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Nikolas Marshall of carjacking a woman in the middle of the night while she was sleeping in her car. On appeal, Marshall argues his conviction must be reversed because (1) the admission of evidence indicating he had been in prison before the incident was unfairly prejudicial and (2) the use of CALCRIM No. 315, the pattern jury instruction on eyewitness identification, violated his due process rights because it permits jurors to consider the witness's level of certainty. We conclude both arguments lack merit and affirm.

## I

## FACTS

The victim is 4 feet 8 inches tall and weighs less than 90 pounds. On August 19, 2015, she was 21 years old and living out of her car, a teal, two-door 1995 Ford Thunderbird. She parked for the night in an unfinished housing development in Victorville and was awakened around 3:00 a.m. by flashlights and male voices telling her she was trespassing and to step out of her car. There were two men standing outside her car, a white man and a black man she later identified as Marshall. Thinking they were police officers, she attempted to roll down her window but accidentally unlocked the car doors instead. Marshall opened the driver's side door and pulled her out of the car by her arm. He told her she had to "pay up" because she was on his family's land. Marshall's

accomplice took her keys, phone, and wallet from her car and gave the phone's battery to Marshall so she couldn't call the police.

The victim told the men all she had was her car and the belongings inside and begged them not to take either. They told her they needed gas, and she said they could siphon some from her car. They looked inside her gas tank and thoroughly searched the rest of her car, whispering to each other the whole time.

After a while, the men went over to their car, which was parked about five feet away, and had a long discussion with the two people inside. The victim saw this as her chance to escape, but when she made a move Marshall told her she wasn't going anywhere. He said his family owned a towing company and were going to have her car impounded.

After about 20 minutes, the people in the car drove away. Marshall's accomplice tossed the victim's keys to Marshall and they got into her car. The victim was able to grab one of her bags from the trunk before Marshall got the engine started. He yelled at her to run, then drove off in the direction the other car had gone.

The victim's former foster parents lived about a mile away, so she ran to their house and used their phone to report the incident. At trial, the prosecution played a recording of the call for the jury. The victim described the men who'd stolen her car as a white man with blond hair and blue or green eyes and a thin, light-skinned black man, about 5 feet 5 inches to 5 feet 8 inches tall, with "shorter" hair than the white man. She gave a similar description to the detective who interviewed her a few hours later. That

3

same day, she went to the hospital for her arm, which felt broken where Marshall had grabbed it. X-rays revealed no fractures but bruising to the bone.

Three days later, police caught Marshall driving the victim's car. Her possessions were gone, the stereo had been replaced, and his photo ID and cell phone were in the center console. The San Bernardino District Attorney's office prepared a six pack including Marshall's photograph, and when they were able to contact the victim several days later, she identified Marshall as the man who'd pulled her out of her car. At trial, the victim said her identification was based on the facial features of the person in the photograph. She said there had been lighting on the street that night, that she had stared at him "eye to eye" and gotten a good look at his face.

Marshall's theory of defense was mistaken identity. He didn't testify or present any witnesses, but during cross-examination and closing argument defense counsel emphasized that the photograph the victim selected from the lineup didn't match her initial descriptions of the black perpetrator shortly after the incident. He argued the victim's failure to mention the perpetrator had a mustache or face tattoos to either the dispatcher or the detective indicated her photo identification of Marshall was inaccurate.

The jury found Marshall guilty of one count of carjacking. (Pen. Code, § 215, subd. (a).) The trial judge, San Bernardino County Superior Court Judge Colin Bilash, sentenced Marshall to a total term of 40 years to life under the "Three Strikes" law.

# II

# ANALYSIS

A.      *Evidence Code Section 352*

During her 911 call that was played for the jury, the victim told the dispatcher that, before taking her car, the black perpetrator had said he'd been "in prison" for "21 years." The victim added, "so I don't know if he's on the run or, I don't know it was just so scary."

Before trial, defense counsel had objected and asked the judge to redact the entire reference to prison as unfairly prejudicial character evidence. The judge said he was inclined to redact the reference to the length of the sentence, but found the rest of the statement "extremely probative as to the issue of force or fear." Defense counsel responded that he preferred no redaction at all if the judge wasn't going to remove the entire statement. The victim made the statement near the end of the call, on page six of a seven-page transcript.

On appeal, Marshall argues the judge should have excluded the statement under Evidence Code section 352 as overly prejudicial. He claims it had little to no probative value because it was irrelevant to his defense of mistaken identity and was, by contrast, extremely prejudicial as evidence of a propensity to commit crime. We disagree.

Evidence that has "any tendency in reason to prove or disprove any disputed fact" at trial is relevant evidence. (Evid. Code, § 210.) In general, all relevant evidence is admissible, and trial judges have broad discretion to determine relevancy. (Evid. Code,

§ 351; see also *People v. Carter* (2005) 36 Cal.4th 1114, 1166; *People v. Alexander* (2010) 49 Cal.4th 846, 904.) Evidence Code section 352 permits a judge to exclude relevant evidence, however, if its probative value is substantially outweighed by its tendency to prejudice the defendant. Evidence is prejudicial if it is inflammatory or likely to confuse the jury and distract from the real issues on trial. (E.g., *People v. Jennings* (2000) 81 Cal.App.4th 1301, 1314.) We review challenges to evidentiary rulings for abuse of discretion. (*People v. Jablonski* (2006) 37 Cal.4th 774, 805.)

Applying these principles here, we think Marshall has minimized the statement's relevance and overstated its potential to harm his defense. Carjacking is the theft of a vehicle from the victim's immediate presence "accomplished by means of force or fear." (Pen. Code, § 215, subd. (a).) Contrary to Marshall's claim, his decision to present a mistaken identity defense didn't lessen the prosecution's burden to prove a carjacking had occurred. Rather, by pleading not guilty, he placed every element of carjacking at issue in his trial, including fear. (*People v. Whisenhunt* (2008) 44 Cal.4th 174, 204.) "There is no requirement that a defendant dispute [a particular element of the crime] before a prosecutor may introduce relevant evidence on the issue. Thus, the prosecution's burden to prove every element of the crime is not relieved by a defendant's tactical decision not to contest an essential element of the offense." (*People v. Escudero* (2010) 183 Cal.App.4th 302, 313 [cleaned up].)

On this record, not only were the means of the taking at issue, they were open to reasonable debate. This is because the victim testified that after she was pulled from her

car (force) she spent 20 or 30 minutes with the perpetrators before fleeing, a fact the defense could argue showed she wasn't afraid of the group. The fact the victim later told police she believed the group's ringleader may have been an escaped convict tends to counter such an inference, thus playing an important role in the prosecution's case.

And, when compared to its probative value, the statement's potential to harm Marshall's defense was slight. The statement conveyed only that the perpetrator had served a lengthy prison sentence but not why. Thus, the jury was given no details about any prior uncharged offenses to inflame their passions or lead them to infer the perpetrator had a propensity to commit a violent crime like carjacking. And as a result, the cases Marshall relies on to demonstrate prejudice do not help his argument. (See *People v. Lopez* (2011) 198 Cal.App.4th 698 [challenged evidence conveyed the type of crime the defendant had previously committed]; *McKinney v. Rees* (9th Cir. 1993) 993 F.2d 1378 [challenged evidence conveyed inflammatory details about the defendant's prior weapon use].)

In our view, the most harmful part of the statement was the part the judge *offered to redact*—the reference to a 21-year sentence. Had defense counsel agreed to the proposed redaction, the jury would have heard the victim say only that the perpetrator told her he'd spent some unspecified amount of time in prison. That the jury heard the length of the sentence was the result of counsel's decision, not a judicial ruling.

Finally, Marshall cannot demonstrate that admission of the statement was prejudicial to his case. (*People v. Ayala* (2000) 23 Cal.4th 225, 271.) This is because even in cases where the potential for prejudice is stronger—that is, where evidence of a prior conviction for a *specific offense* is admitted over the defendant's objection—the evidence is not deemed prejudicial if the record "points convincingly to guilt." (*People v. Allen* (1978) 77 Cal.App.3d 924, 935.) And here, though Marshall's defense was that the prosecution had the wrong person, the evidence of his guilt was strong. Not only was he caught driving the victim's car shortly after it was stolen, but the victim—who'd spent a significant amount of time in close contact with the carjacker—identified him as her assailant. Compared to this inculpatory evidence, the victim's brief statement to the dispatcher is unlikely to have affected the outcome of trial. (*People v. Watson* (1956) 46 Cal.2d 818, 835.)

B.    *CALCRIM No. 315*

Because the prosecution presented evidence that the victim had identified Marshall in a photographic lineup, the trial judge gave the jury CALCRIM No. 315, the standard instruction regarding eyewitness identification. The instruction directs the jury to consider up to 15 factors in evaluating eyewitness identification testimony, one of which is the witness's level of certainty. It says in relevant part: "You have heard eyewitness testimony identifying the defendant. As with any other witness, you must decide whether an eyewitness gave truthful and accurate testimony. [¶] In evaluating identification

8

testimony, consider the following questions: [¶] ... [¶] How certain was the witness when he or she made an identification?"[1] (CALCRIM No. 315.)

Despite failing to object to the instruction or ask the judge to modify it, Marshall now argues the part permitting jurors to consider the eyewitness's level of certainty violated his due process rights and prejudicially harmed his case. We conclude Marshall forfeited this argument by failing to give the trial judge an opportunity to respond to it during trial. (See *People v. Sanchez* (2016) 63 Cal.4th 411 [challenges to CALCRIM No. 315 are subject to forfeiture].) But in any event, the argument fails on the merits because our Supreme Court recently rejected it in *People v. Lemcke* (2021) 11 Cal.5th 644, concluding CALCRIM No. 315's certainty factor does not violate due process. (*Id.* at pp. 644, 657 ["we find nothing in [the] instruction on witness certainty that operates to 'lower the prosecution's burden of proof'"].)

---

[1] The other 14 factors are: whether the witness knew or had contact with the defendant before the event; how well they could see the perpetrator; the circumstances affecting their ability to observe the perpetrator; how closely they were paying attention; whether they were under stress when they made the observation; whether they gave a description of the perpetrator and, if so, how it compares to the defendant; how much time passed between the event and the identification; whether the witness was asked to pick the perpetrator out of a group; whether the witness ever failed to identify the defendant; whether the witness ever changed their mind about the identification; whether the witness is of a different race than the defendant; whether the witness identified other participants in the crime; whether the witness identified the defendant in a photographic or physical lineup; and any other circumstances affecting the witness's ability to make an accurate identification. (CALCRIM No. 315.)

### III

### DISPOSITION

We affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

SLOUGH
Acting P. J.

We concur:

RAPHAEL
J.

MENETREZ
J.

10