Filed 1/18/24  P. v. Rico CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RICCO RICO,<br><br>    Defendant and Appellant. | 2d Crim. No. B324778<br>(Super. Ct. No. 2018021180)<br>(Ventura County) |

Ricco Rico appeals his convictions by jury on one count of continuous sexual abuse of a child under the age of 14 (count 1; Pen. Code, § 288.5, subd. (a)),[1] two counts of lewd act upon a child under the age of 14 (counts 2 and 3; § 288, subd. (a)), one count of rape of an intoxicated person (count 4; § 261, subd. (a)(3), one count of oral copulation of an intoxicated person (count 5; § 287, subd. (i)), and one count of forcible oral copulation (§ 287, subd. (c)(2)(A)).  Rico contends the trial court violated his due process

---

[1] Unlabeled statutory cites are to the Penal Code.

rights when it admitted testimony from five women about uncharged acts of sexual assault and molestation (Evid. Code, § 1108, subd. (a)).  We will affirm.

FACTS AND PROCEDURAL HISTORY

*Victim E.R. (Counts 1 and 2)*

Rico's daughter E.R. was born in 1996.  She was 11 years old when Rico and her mother divorced.  Rico began sexually abusing E.R. around this time.  He would give her prescription pills to swallow before bed and ask her to sleep with him because he was lonely.  She would wake up to find Rico touching her, forcing her hand to stroke his genitals, or even raping her.  This happened two or three times a week.  Rico also molested her during a camping trip to Lake Casitas and when the family traveled to a football game in Arizona.

*Victim J.R. (Count 3)*

Rico's daughter J.R. was born to a different mother in 1995.  Her parents never married.  J.R. did not meet Rico until she was around nine years old, when her mother lost custody due to substance abuse and J.R. chose to live with Rico and his then-wife rather than enter foster care.  Rico molested her on the Lake Casitas camping trip as well.  J.R. remembered him lying next to her, sticking his hand down her pants, touching her vaginal area, then reaching up her shirt and touching her breasts.  J.R. turned away and Rico laughed at her.  She told no one about the incident because she feared returning to foster care.

*Victim M.R. (Counts 4, 5, and 6)*

M.R. is Rico's paternal half-sister and 15 years younger.  She first met Rico when he began staying in New Mexico over summer break.  M.R. began visiting California because she

wanted to develop a relationship with her half siblings and heal the rift between their father's two families.

On one such trip to California, Rico served her mixed drinks during a family party. M.R. was only 15 and had little experience with alcohol. She began feeling tired and dizzy. Rico sent her a text message from across the room asking if he could take her virginity, which she ignored. Her head began spinning and she grew increasingly intoxicated. Rico asked her to join him on the couch and he began rubbing her feet. He moved his hands up her legs and placed his fingers in her vagina. He then told her to go to bed. She got up and stumbled toward J.R.'s room. Rico told her to go to his room instead because J.R. had school the next day.

M.R. awoke to Rico having sex with her in his bed. As she went in and out of consciousness, she recalled him performing oral sex on her and then attempting to force his penis into her mouth. M.R. initially said nothing about the incident, but reported it four years later when she was told that Rico had abused several other family members.

*Section 1108 Witnesses*

The People identified eight witnesses who would testify pursuant to Evidence Code section 1108, subdivision (a) about uncharged acts of sexual abuse by Rico. This included: three of Rico's younger half-sisters from New Mexico (B.R., A.R., and G.L.R.); his ex-wife's friend (J.D.); his daughter's friend (D.G.); his ex-wife (G.M.R.); his ex-girlfriend (A.M.); and his half-brother (D.R.). The trial court excluded A.M.'s and D.R.'s proffered testimony because it was not similar enough to the charged crimes. It allowed the remaining six to testify.

3

B.R. was six years younger than Rico. He began abusing her at age 7 in New Mexico. She remembered him wrestling her to the ground, removing her pants, and touching her vagina. The next summer he told her to lay behind a kiddie pool that was leaning against the house. He then removed her underwear and sprayed a garden hose between her legs. When she was 12, he held her against a wall by the neck and forced her to touch his penis while he ejaculated. He threatened to "kick [her] ass" if she told anybody.

G.L.R. was 15 years younger than Rico. He first abused her at age 15 at their father's cabin. He offered to rub her stomach because she did not feel well. She sat on the couch next to him and they started watching a movie. He began rubbing her stomach but slowly moved his hand down her pants. She stood up, said she was tired, and went to her room. G.L.R. then described three occasions when Rico reached down her pants when she was asleep or falling asleep.

A.R. was 14 years younger than Rico. She visited California with a friend at age 19 to reconnect with him and other family members. Rico offered to let A.R. and the friend stay in his bedroom. While sleeping, she awoke to him lying next to her trying to penetrate her vagina with his fingers. Rico "whispered he loved [her] in her ear" as she tried to wrestle away from him.

J.D. described herself as best friends with Rico's ex-wife, G.M.R. J.D. testified about an incident when she returned to G.M.R.'s and Rico's house in Port Hueneme after a night of drinking. J.D. slept on their couch because she did not want to drive home. She awoke to Rico yanking on her pants and boots and G.M.R. yelling "Ricco, what the fuck are you doing?" He

4

responded that he was helping J.D. "chang[e] into her pajamas." G.M.R. corroborated J.D.'s account of the incident.

D.G. became best friends with victim J.R. in high school. She testified about an incident that occurred when J.R. returned home on leave after joining the Navy. D.G. had just turned 18. They visited Rico's house. He offered to let them sleep in his bedroom because the other rooms were occupied. The next morning, D.G. felt someone get into bed and start cuddling her from behind. It was Rico. He laid against her and put his arm and leg across her body. This made her uncomfortable so she "got out of there as quickly as [she] could."

### Defense Witnesses

Defendant called several witnesses who testified they had never seen Rico act inappropriately around his daughters and sisters. This included his adoptive daughter, his brother's ex-wife, two cousins, brother, mother, his third ex-wife, and a friend whose children he babysat for several years.

Rico testified in his own defense. He admitted struggling with prescription drug addiction and mental health problems after injuring himself at work. He denied ever molesting, raping, or drugging his accusers and said they were all lying.

The People called Rico's former live-in girlfriend A.M. in rebuttal. She testified that several times he gave her medication or drinks that caused her to pass out. She would wake up to him penetrating her with his penis, fingers, or an object. The defense called a neighbor in surrebuttal who called A.M. a habitual liar. Rico denied ever drugging her.

### Verdict and Sentencing

Jurors returned guilty verdicts on all six counts. They found true special allegations on each count that he committed

the offenses against more than one victim (§ 667.61, subd. (e)(4)), and that each victim was under the age of 18 and prosecution commenced prior to their 40th birthday (§ 801.1, subd. (a)(1)). The court held a bifurcated trial on additional special allegations.[2] It found these true as well. Rico received consecutive terms of 15 years to life on counts 1, 2, 3, and 6 and consecutive determinate terms of six years on counts 4 and 5.

DISCUSSION

*Section 1108 Evidence*

Evidence Code section 1108, subdivision (a) states: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." This serves as a limited exception to the rule against propensity evidence in criminal cases. (*People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 822-823 (*Daveggio*); *People v. Williams* (2016) 1 Cal.5th 1166, 1196 (*Williams*).) Our Legislature has determined that prior sexual offense evidence is particularly probative, and there is a presumption in favor of its admission.

---

[2] Rico waived his right to a jury trial on special allegations that: (1) counts 1, 2, 3, and 4 "involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness" (Cal. Rules of Court, rule 4.421(a)(1)); (2) counts 1 through 6 involved a "victim [who] was particularly vulnerable" (*Id.*, rule 4.421(a)(3)); (3) counts 1, 2, 3, and 4 were carried out in a manner that "indicates planning, sophistication, or professionalism" (*Id.*, rule 4.421(a)(8)); and (4) that "defendant took advantage of a position of trust or confidence to commit the offense" in counts 1 through 6 (*Id.*, rule 4.421(a)(11)).

(*People v. Loy* (2011) 52 Cal.4th 46, 61-63.)  Courts should exclude such evidence only when its prejudicial effect substantially outweighs its probative value into the defendant's disposition to commit the charged offenses.  (*Daveggio*, at p. 823; *Williams*, at p. 1196.)  The "prejudice" under section 352 is that which tends to evoke an emotional bias against the defendant, i.e. prejudging him based upon extraneous factors.  (*Daveggio*. at p. 824.)

Our Supreme Court has long held that admitting evidence of uncharged sex offenses does not violate the due process clause of the United States Constitution.  (*Daveggio*, *supra*, 4 Cal.5th at p. 827; *Williams*, *supra*, 1 Cal.5th at p. 1196.)  Rico concedes the point but nevertheless challenges the trial court's admitting uncharged acts testimony from six witnesses at trial.  "The sheer number of witnesses, whose stories were not similar to the charged offenses," he argues, "was highly inflammatory and unduly prejudicial."  He contends this violated his right to due process.  (See *People v. Falsetta* (1999) 21 Cal.4th 903, 913 ["The admission of relevant evidence will not offend due process unless the evidence is so prejudicial as to render the defendant's trial fundamentally unfair"].)

The quantity of section 1108 witnesses was not unduly prejudicial considering the number of victims and the breadth of the allegations against Rico.  The charged crimes involved multiple victims who were sexually abused many years ago.  Allowing the People to proffer testimony from six additional victims was not so disproportionate or cumulative "'as to render [his] trial fundamentally unfair.'"  (See *People v. Partida* (2005) 37 Cal.4th 428, 439.)  Their testimony consumed just one day of eight the jury heard evidence.

The record contradicts Rico's description of the uncharged crimes as "not similar" to the charged crimes. Each of the six witnesses described being vulnerable because of their age, intoxication, or unconscious state. "The fact that defendant committed a sexual offense on a particularly vulnerable victim in the past logically tends to prove he did so again with respect to the current offenses." (*People v. Cromp* (2007) 153 Cal.App.4th 476, 480 [prior rape of developmentally disabled woman not so dissimilar to molestation of young boys].) The existence of minor factual differences between these acts of abuse and the charged crimes did not compel the trial court to exclude them from evidence. (See *People v. Cordova* (2015) 62 Cal.4th 104, 133 [enough that charged and uncharged offenses are sex offenses within section 1108]; *People v. Escudero* (2010) 183 Cal.App.4th 302, 306 [evidence demonstrated defendant took advantage of vulnerable females regardless of their ages].)

Lastly, the trial court properly instructed the jury about weighing evidence, determining witness credibility, presuming innocence, applying burdens of proof, and considering uncharged and charged sex offenses. (CALCRIM Nos. 220 [reasonable doubt], 222 [evidence], 226 [witnesses], 375 [evidence of uncharged offense], 1191A [evidence of uncharged sex offense], 1191B [evidence of charged sex offense].) We presume the jury understood and followed these instructions. (*People v. Myles* (2012) 53 Cal.4th 1181, 1212.)

*Sentencing Error*

Rico received consecutive sentences of 15 years to life on counts 1, 2, 3 and 6. He concedes the sentence on count 1, i.e., continuous sexual abuse of a child under section 288.5, subdivision (a), should have been 25 years to life. (§ 667.61, subd.

8

(c)(9) & (j)(1);  See *People v. Scott* (1994) 9 Cal.4th 331, 354 [unauthorized sentence may be corrected at any time, regardless of whether defendant objects in trial court].)

DISPOSITION

Rico's sentence on count 1 is modified to 25 years to life (§ 1260).  The clerk of the superior court shall prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation.  The judgment is affirmed in all other respects.

NOT TO BE PUBLISHED.


CODY, J.


We concur:


GILBERT, P. J.


BALTODANO, J.

Paul W. Baelly, Judge

Superior Court County of Ventura

_____

Verna Wefald, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and Michael J. Wise, Deputy Attorney General, for Plaintiff and Respondent.